OPINION OF THE COURT
Martin Schoenfeld, J.
This action was commenced by plaintiff, Ralph Mendez, to *916 recover $17,763.10 in damages against Apple Bank for Savings (hereinafter referred to as Apple Bank) for legal harassment and violations under section 1692 of the Fair Debt Collection Practices Act (15 USC § 1692 et seq.). Although these claims are set forth as a single cause of action in the summons and indorsed complaint they appear to be based upon two distinct legal theories and are therefore considered separately below. The matter is now before this court on both plaintiffs motion and defendant’s cross motion for summary judgment. The material facts are as follows:
On December 15, 1983 an individual claiming to be Ralph Mendez applied for and obtained a personal loan from Apple Bank. A copy of a tax return containing the same name, address and Social Security number as the plaintiff herein accompanied the application. This information was also given on the loan application. Thereafter the loan became delinquent and Apple Bank commenced legal proceedings. An answer to the complaint was never filed and a default judgment in the amount of $1,587.70 was entered against plaintiff on September 26, 1984. An investigation by the bank revealed that an individual having the same name, address and Social Security number as that specified on the loan application and tax return was employed as a porter by Dwelling Managers Inc. An income execution containing this information was then furnished to the City Marshal. Sometime in August of 1987 the plaintiff discovered that his wages were being garnished and through his attorney notified Apple Bank that he had never obtained the loan in question and that it had garnished the wages of the wrong person. According to the plaintiff, the loan was probably obtained by a second individual also named Ralph Mendez who in the past had coincidentally resided at the same address although in a different apartment. While it is unclear how this other Ralph Mendez obtained plaintiff’s Social Security number, plaintiff surmises that this person may at one time have had access to his mailbox.
PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT
To be successful on a motion for summary judgment it is incumbent upon the moving party to demonstrate that as a matter of law he is entitled to the relief requested and that no meritorious defense to the action exists. (Pastoriza v State of New York, 108 AD2d 605 [1st Dept 1985].) Furthermore the *917 supporting motion papers must include an affidavit by an individual having personal knowledge of the facts. (CPLR 3212 [b].) As is explained below neither of these requirements have been satisfied and plaintiffs motion must therefore be denied.
The documents initially submitted in support of this motion are a notice of motion, a one-page affirmation from plaintiffs attorney, a copy of the pleadings, and proof of service of the motion. In his affirmation counsel states that he is familiar with the facts of the case (although none are set forth), that discovery has been conducted, and that defendant has offered to settle the matter. On this basis he requests summary judgment in plaintiffs favor along with a hearing to determine the attorney’s fees and punitive damages which in his opinion should be assessed against defendant. The deficiency of this affirmation for the purpose intended is patently clear. Not a shred of evidence demonstrating that plaintiff is entitled to judgment is presented. (Krupp v Aetna Life & Cas. Co., 103 AD2d 252 [2d Dept 1984].) The fact that settlement negotiations have taken place has absolutely no bearing on whether liability should attach. (Universal Carloading & Distrib. Co. v Penn Cent. Transp. Co., 101 AD2d 61 [1st Dept 1984].) Furthermore, an affirmation from an attorney lacking personal knowledge of the events which allegedly entitle the movant to a determination in his favor is of no probative value and may not serve as the basis upon which such a motion is granted. (Roche v Hearst Corp., 53 NY2d 767 [1981]; Stainless, Inc. v Employers Fire Ins. Co., 69 AD2d 27 [1st Dept 1979], affd 49 NY2d 924 [1980].)
While an affidavit by plaintiff Ralph Mendez was subsequently submitted in opposition to defendant’s cross motion and in further support of plaintiffs own motion, the assertions contained therein are for the most part conclusory, and completely contradict earlier testimony given by Mr. Mendez at a pretrial deposition. Thus for example it is stated in the Mendez affidavit that the bank prepared an execution despite first being notified of the alleged misidentification. However at his deposition Mr. Mendez said that he never personally notified the bank and that he contacted his lawyer after his wages were garnished. In any event even if the affidavit of Mr. Mendez is accepted as credible, summary judgment must be denied to him because as set forth below, plaintiff fails to demonstrate that Apple Bank engaged in the type of conduct prohibited by the Fair Debt Collection Practices Act.
*918 DEFENDANT’S CROSS MOTION FOR SUMMARY JUDGMENT
In its cross motion for summary judgment Apple Bank asserts that the Fair Debt Collection Practices Act (15 USC § 1692 et seq.) (hereinafter referred to as the FDCPA) does not govern the situation at hand and may not serve as the predicate for this lawsuit. I agree. The legislative history behind the FDCPA makes clear that its purpose is "to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors” (S Rep No. 95-382, 95th Cong, 1st Sess, at 1-2, reprinted in 1977 US Code Cong & Admin News 1696). The act was promulgated upon a finding that persons collecting debts for others were increasingly engaging in methods designed to annoy and intimidate debtors into satisfying outstanding debts. Abuses cited by the committee investigating the need for this act include "obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer’s legal rights, disclosing a consumer’s personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.” (1977 US Code Cong & Admin News 1696.) The FDCPA attempts to remedy these abuses by regulating the time, form and content of any communication occurring between debt collectors and consumers.
The inapplicability of the FDCPA to the present situation is evidenced by numerous factors. First and foremost, the act governs collection practices of debt collectors only. See, 15 USC § 1692a (6) where a debt collector is defined as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.” (Emphasis added.) This limitation stems from the Senate Committee’s belief that these third-party "debt collectors are the prime source of egregious collection practices.” The same Senate Report continues that: "[UJnlike creditors, who generally are restrained by the desire to protect their good will when collecting past due accounts, independent collectors are likely to have no future contact with the consumer and often are unconcerned with the consumer’s opinion of them. Collection agencies generally operate on a 50-percent commission, and this has *919 too often created the incentive to collect by any means.” (1977 US Code Cong & Admin News 1696.) Accordingly, the FDCPA is meant to reach only "those who regularly collect debts for others and not creditors [collecting on their own behalf]” (Kizer v Finance Am. Credit Corp., 454 F Supp 937, 939 [ND Miss 1978]). Here, Apple Bank attempted to collect a debt owed to itself and is therefore not a debt collector as defined by this act. (Also see, Baldwin v First Natl. Bank, 362 NW2d 85 [Sup Ct, SD 1985].)
Second, the conduct engaged in by Apple Bank is not of the type expressly prohibited by the FDCPA. An example of behavior which this act aims to prevent may be found in Bingham v Collection Bur. (505 F Supp 864 [ND 1981]). There a collection agent attempting to collect a debt owed to a hospital for the delivery of a debtor’s child was found to have violated this act when he telephoned the debtor’s home 14 times during a four-week period and commented on one occasion that the debtor should not be having children if she could not afford them. In the case at hand Apple Bank merely utilized legitimate judicial processes to collect the outstanding debt. Such legal recourse does not by itself give rise to a violation of this act. (See, Marine Midland Bank v Carroll, 98 AD2d 516 [3d Dept 1984].) That Congress did not intend for this act to hamper the pursuit of legal remedies is evidenced by its exemption from coverage of individuals serving legal process "in connection with the judicial enforcement of any debt”. (15 USC § 1692a [6] [D].) As a result some misconduct other than the erroneous enforcement of a properly entered judgment would have to be alleged to state a cause of action under this statute.
Third, even if plaintiff had succeeded in demonstrating that Apple Bank was a debt collector and had engaged in conduct prohibited under this act it is unlikely that liability would be imposed. Pursuant to 15 USC § 1692k (c) this act will not be enforced when there is a preponderance of evidence that the violation was unintentional or resulted from a bona fide error. (Bingham v Collection Bur., supra.) Given the circumstances of this particular case one would be hard pressed to find any impropriety by the bank. As it is highly unlikely that two unrelated individuals would share a common name and address let alone the same Social Security number, even if there was a mistake on the part of the bank (which is not conceded), it is certainly understandable.
Finally, the protections afforded under the FDCPA may be *920 invoked only when the debt results from a transaction entered into "primarily for personal, family, or household purposes” (15 USC § 1692a [5]). Thus, a debt incurred purely for business reasons is not covered by this act. (Bank of Boston Intl. v Tefel, 644 F Supp 1423 [ED NY 1986].) Here the plaintiff has not provided any information with respect to the underlying circumstances of the loan or the purpose for which it was to be used. Therefore, for all the reasons indicated above plaintiff’s cause of action alleging violations under section 1692 of the FDCPA must be summarily dismissed.
Apple Bank’s cross motion also seeks dismissal of plaintiff’s claim for harassment. It is unclear whether this claim is predicated on section 1692d of the FDCPA or whether it is intended to be a separate cause of action for a tort such as abuse of process or prima facie tort. In either case it must fail. In the first instance it has already been determined that the FDCPA is inapplicable to this case. In the second, plaintiff has not alleged the elements essential to a cause of action sounding in abuse of process or in prima facie tort. Abuse of process requires a showing that process has been issued solely to achieve an improper purpose while prima facie tort is commonly defined as the intentional infliction of harm without excuse or justification by acts otherwise lawful that cause the plaintiff to incur special damages. (Curiano v Suozzi, 63 NY2d 113 [1984].) Accordingly this claim is similarly dismissed.
Defendant’s final request for costs and attorney’s fees pursuant to section 1692k (a) (3) of the FDCPA is however denied. That provision authorizes the court in its discretion to award a successful defendant the costs and attorney’s fees incurred in defending against the action when it is determined that the action was brought in bad faith or merely to harass the defending party. For the court to appropriately award fees under this section it is not enough that plaintiff’s case is ultimately dismissed. In the absence of any evidence that plaintiff believed his action to be without merit or was motivated purely by a desire to harass Apple Bank, sanctions under this provision are not warranted. This is particularly true where, as here, the bank may well have made a mistake which at the very least caused Mr. Mendez to be inconvenienced.
*921 To reiterate, plaintiffs motion for summary judgment is denied. Defendant’s cross motion for an order dismissing the pending action is granted. However, defendant’s demand for reimbursement of costs and attorney’s fees is denied.*

 I wish to acknowledge the assistance of Ronda Halperin in the preparation of this memorandum opinion.