**Janis BOWN, et al., Appellants,**

v.

**William HAMILTON, Appellee.**

**No. 90–769.**

District of Columbia Court of Appeals.

Argued Nov. 1, 1991.
Decided Jan. 17, 1992.

---

Frederic W. Schwartz, Jr., Washington, D.C., for appellants.

John L. Ridge, Jr., Washington, D.C., for appellee.

Before TERRY and STEADMAN, Associate Judges, and NEWMAN, Senior Judge.

STEADMAN, Associate Judge:

In this case, a tenant of mixed residential/commercial premises [1] sought to recover damages against her landlord on several disparate tort theories, including wrongful eviction, constructive eviction, intentional infliction of emotional distress, and abuse of process.[2] The trial court granted summary judgment in favor of the landlord on all these counts, and the tenant appeals. We agree with the trial court that the undisputed facts in this case, involving a fairly unremarkable lease disagreement, could not support liability under any of these tort theories. Accordingly, we affirm.

I

As the tenant acknowledges, the relevant facts to the summary judgment issue are "not disputed." The lease, dated August 20, 1983, to commence on October 1, 1983, for a three-year term, covered the two upper floors of a house on MacArthur Boulevard. In addition, the lease gave the tenant an "option to add basement after one year" for an additional $300 per month "on or after September 1, 1984." [3]

The landlord on December 1, 1984, rented the basement to a third person for two years at a monthly rental of $600.[4] By letter of August 27, 1985, the tenant attempted to exercise the option in her lease. In a reply letter two days later, the landlord gave the tenant a notice to quit, "because of a failure to pay rent timely, and for other reasons." [5] On November 8, 1985, the landlord filed a complaint for possession to recover the premises. The tenant filed an answer setting forth her defenses and denying the landlord's right to possession. About February 28, 1986, with the action still pending, the tenant vacated the premises.

On February 27, 1987, the tenant filed a six-count action against the landlord alleging breach of contract, wrongful eviction, constructive eviction, intentional infliction of emotional distress, malicious prosecution, and abuse of process, and seeking

1. The lease was in the name of both Janis Bown and Phoenix Interiors, Inc., as tenants. The latter was an interior design firm which Ms. Bown operated from the premises as a home occupation. For convenience, in this opinion, the two will be referred to collectively as "the tenant."

2. The complaint also contained a count for malicious prosecution, which is abandoned on appeal, and a count for breach of contract. The trial court denied the motion for summary judgment on the latter count; it was subsequently dismissed by stipulation.

3. The option was provided for in two parts of the one-page printed-form lease. First, in describing the term, the lease provided that it was "for the term of *three (3) years, with option to add basement after one year,* commencing on the *first* day of *October, 1983,* and ending on the *thirtieth* day of *September, 1986,* for the sum of *Fourteen Thousand and Four Hundred ($14,-400.00)* Dollars per annum." The italicized portions were typed into the printed form. Second, the lease contained this additional typed provision: "The option to lease the basement also, on or after *September 1, 1984,* will, if exercised, change the monthly rental to Fifteen Hundred Dollars ($1,500.00) plus all utilities."

4. By letter of September 5, 1984, the landlord confirmed a conversation with the tenant that she had decided not to exercise the option at that time, and that the unit would be rented to another. The letter further stated that "it will be available to you on the yearly anniversary date, always respecting the lease agreement of the occupant, since you indicate a willingness to stay long term." The tenant asserted in a deposition that she had said that she was not relinquishing her continuing right under the lease to rent the basement and would seek to do so in the future. During 1985, it appears that there was considerable friction concerning other aspects of the relationship, such as the parking situation.

5. At the time, no rent was in fact owed. The written lease called for rent payments on the first of each month. In an answer to interrogatory, the tenant acknowledged that the rent payments were usually made the fifth of the month or later, which she asserted was pursuant to oral agreement. Notwithstanding the notice to quit, the tenant tendered a rent payment in September, which was accepted. The landlord's counterclaim asserted that no rent was paid for October or November.

compensatory damages of $1,325,000 and punitive damages of $3,800,000. After filing an answer and counterclaim,[6] the landlord moved for summary judgment on all counts. The motion was granted as to all counts except that alleging breach of contract. Subsequently, the parties by stipulation dismissed the contract count and the counterclaim.[7] An appeal of the grant of summary judgment on the remaining counts was thereupon taken by the tenant and is now before us for decision.

## II

On appeal, the tenant challenges the summary judgment with respect to the eviction counts, the count for intentional infliction of mental distress, and the count for abuse of process.[8] We review under the familiar standard that summary judgment is to be granted only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Super Ct. Civ.R. 56(c); *Hill v. White*, 589 A.2d 918, 920–21 (D.C.1991).

## A

■ The tenant's major attack on appeal is to the dismissal of the constructive eviction count. It is not disputed that the

tenant herself made the decision to leave the premises in February 1986. However, she argues, a constructive eviction occurs where the tenant "abandon[s] the premises in consequence of an act or omission of the landlord ... which deprives the tenant of possession of part or all of the leased property." *Rittenberg v. Donohoe Constr. Co.*, 426 A.2d 338, 342 (D.C.1981). *See also, e.g., International Comm'n on English v. Schwartz*, 573 A.2d 1303, 1305 (D.C.1990). Constructive eviction, like actual eviction, is a violation of the covenant of quiet enjoyment implied in leases. *Weisman v. Middleton*, 390 A.2d 996, 1001 (D.C.1978).[9] Here, the alleged evictive acts of the landlord were, first, the issuance of the notice to quit and institution of the suit for possession, and, second, the refusal to allow the tenant to take possession of the basement space to which the lease option applied.

■ We do not think that either of these acts fairly falls within the doctrine of constructive eviction as the basis for an independent action apart from breach of contract. The tenant never in fact had possession of the basement space, and hence there was never any possession of the tenant upon which any sort of "eviction" could operate.[10] The dispute was simply over the

---

**6.** The counterclaim sought $3600 in unpaid rent for three months (October and November 1985 and March 1986) and $2500 for costs of repairs and renovations caused by plaintiff.

**7.** The praecipe of dismissal provides that if the plaintiff eventually recovers a judgment on the remaining counts, $500 will be added thereto.

**8.** Appellant makes no claim of error in the dismissal of the malicious prosecution count.

**9.** "Both historically and functionally, the doctrine of constructive eviction is an extension of the doctrine of actual eviction. Here the concept is that, because of some wrongful act or omission by the landlord, the premises become uninhabitable ("untenantable") for the intended purposes. The tenant is not physically evicted or excluded—but he might as well be.
... Thus, there is an eviction, though constructive instead of actual." R. CUNNINGHAM, W. STOEBUCK & D. WHITMAN, THE LAW OF PROPERTY 296 (1984). The importance of the concept of constructive eviction historically was that it provided a mechanism for the tenant to declare the

leasehold at an end in an era when almost all covenants in a lease were deemed independent. *See, e.g., Pinching v. Wurdeman*, 56 App.D.C. 223, 12 F.2d 164 (1926) (covenant to pay rent and covenant to repair are independent). Only where the landlord had "evicted" the tenant was the tenant permitted to terminate a lease for breach by the landlord of a leasehold obligation. CUNNINGHAM, *supra* at 294–95. The significance of the concept has markedly dwindled as ordinary contract principles have come to be applied to leaseholds, discussed *infra*. *See generally* R. SCHOSHINSKI, AMERICAN LAW OF LANDLORD AND TENANT §§ 3.5–3.8 (1980).

**10.** *See* 49 AM.JUR.2D *Landlord and Tenant* § 303 at 318 (1970) (citing "authority to the effect that one cannot be evicted from premises of which he has never had possession—in other words one cannot lose possession if one has not had possession"). The tenant does not dispute the correctness of this general proposition, but argues that the refusal to allow her to use the basement had an impact upon her ability to make full use of the upper two floors as contemplated by the lease. This is too attenuated to be

true meaning of the option provision of the contract. Likewise, the institution of the suit in no way affected the tenant's actual existing possession of the property. These same considerations are fatal to plaintiff's action for wrongful eviction. Both concepts deal with acts of the landlord which have an immediate actual impact upon the tenant's existing use of the premises. They are in the modern legal framework ill-suited to disputes over the meaning of contractual language, for whose peaceful resolution only the procedures of the court system are invoked.[11]

In *Parker v. Stein,* 557 A.2d 1319, 1322 (D.C.1989), we manifested this understanding of the nature of the eviction tort. There, the landlord, without notice, removed all of the tenant's worldly possessions from his apartment and sent them away as trash in a garbage truck. We noted that thus the case "was similar in principle to wrongful eviction" and cited the earlier holding of *Robinson v. Sarisky,* 535 A.2d 901, 905 (D.C.1988).[12] In *Robinson,* the purchaser at a tax sale had repeatedly boarded up and changed the locks of the property, despite notification from the plaintiff that he was lawfully living in the premises. And in *Weisman v. Middle-*

*ton, supra,* we specifically held that the landlord's suit for possession was not itself a breach of the tenant's quiet enjoyment since she remained in possession of the apartment in question. 390 A.2d at 1001 ("The covenant is not broken unless there is an eviction from, or some actual disturbance in, the possession by the landlord," quoting from *Hyde v. Brandler,* 118 A.2d 398, 399–400 (D.C.1955)).

■ This is not to say that the landlord's actions would not be relevant to a determination in an action for breach of contract whether the tenant had the right to declare that the lease as a contract was no longer in effect and thus leave the premises. In this regard, however, normal contractual principles of rescission and damages would control. Over twenty years ago, it was observed by our sister federal court, in a decision controlling in our jurisprudence,[13] that "courts have been gradually introducing more modern concepts of contract law in interpreting leases.... In our judgment, the trend toward treating leases as contracts is wise and well considered. Our holding in this case reflects a belief that leases of urban dwelling units should be

deemed actual tortious interference by the landlord with a tenant's use, at least where that use is unchanged from that already carried on for two-thirds of the lease term and where the actual departure constituting the alleged constructive eviction did not occur until months after the complained-of act. Traditionally, to claim a constructive eviction, the tenant had to leave the premises within a "reasonable time" after the alleged interference with use. *See* CUNNINGHAM, *supra* at 298, and authorities cited.

11. Appellant has cited us to no cases in our jurisdiction, and we know of none, where the refusal to put a tenant into possession or the filing of an action to recover possession has been termed an eviction in and of itself, either wrongful or constructive. Although there is authority contra, some mostly older cases from other jurisdictions have found a notice to quit or an action for possession sufficient to justify a tenant's abandonment of the premises under the rubric of constructive eviction, *see* 52 C.J.S. *Landlord & Tenant* § 458 at 315–16 (1964); Annot., 14 A.L.R.2d 1451 (1950), an extension of the concept no longer needed with the development of the doctrine of a lease as a contract with normal contract remedies, as discussed *infra.* See also note 9, *supra.* The tenant ar-

gues that a possessory action should be deemed an eviction because otherwise the tenant would be forced to incur litigation costs in defending the action. But this consideration seems no different from that faced by any other contracting party in deciding how to deal with an attempted contract termination. The tenant also asserts several defects in the content and service of the notice to quit, but these go to the enforceability of the possessory suit, not to the question of eviction as such.

12. *Robinson* in turn was quoting from *Higgins v. Dail,* 61 A.2d 38, 40 n. 2 (D.C.1948), a case in which the appellant charged that the landlord "at a late hour made demand that she move, the demand being made in such manner and under such circumstances that appellant and her mother, who lived with her, were forced immediately to leave the premises." *Id.* at 39. *See also Mendes v. Johnson,* 389 A.2d 781, 792 (D.C. 1978) (en banc), recognizing the tenant's right to an action for unlawful eviction where the landlord used self-help to evict a tenant and noting that "an action will lie in tort against a landlord who evicts a tenant *without legal process." Id.* at 782 (emphasis added).

13. *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971).

interpreted and construed like any other contract." *Javins v. First Nat'l Realty Corp.*, 138 U.S.App.D.C. 369, 373, 428 F.2d 1071, 1075 (1970). We ourselves have likewise stated that "the substantive rules of contract law govern (in a lease dispute), for we have recognized that leases of urban dwelling units are to be construed as any other contract." *Management Partnership, Inc. v. Crumlin*, 423 A.2d 939, 941 (D.C.1980). We have no occasion to determine precisely what contract damages might apply here, the parties having stipulated with respect to that count.

In sum, reliance on the orderly processes of law to resolve a leasehold dispute need not, and should not, in itself provide the basis for a discrete cause of action in eviction. To the extent that such processes are misused, the other traditional forms of redress for such situations are as open to parties to a lease as to any other person aggrieved by such misuse. We thus turn to the tenant's remaining claims.

### B

■ With respect to the count for intentional infliction of emotional distress, the tenant rightly acknowledges that her burden is high. As we have said, liability "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C. 1982), quoting RESTATEMENT (SECOND) OF TORTS § 46, comment d at 73 (1965); *see also Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.1980) (acts giving rise to liability must be *both* "beyond all the bounds of decency" and "without just cause or ex-

cuse") (citation omitted); *District of Columbia v. Thompson*, 570 A.2d 277, 290 (D.C.1990).

■ Here, the tenant asserts as the basis for recovery the fact that the landlord sought to evict her without justification when she attempted to exercise the option and that he continued his suit for possession even after he had no right to do so. In both instances, however, the landlord took no overt acts of self-help but, on the contrary, resorted to legal processes. Thus, this case markedly differs from the facts, described above, of *Parker v. Stein, supra*, and *Robinson v. Sarisky, supra*, relied on by the tenant. These cases bear no resemblance to that presented here. The trial court did not err in concluding that the facts relied upon could not meet the requisite standard for recovery on a theory of intentional infliction of emotional distress.

### C

■ Finally, the tenant challenges the summary judgment on the count of abuse of process. That tort lies where the legal system "has been used to accomplish some end which is without the regular purview of the process, or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be required to do." *Morowitz v. Marvel*, 423 A.2d 196, 198 (D.C.1980), quoting from *Jacobson v. Thrifty Paper Boxes, Inc.*, 230 A.2d 710, 711 (D.C.1967).

■ The tenant asserts that this cause of action is not dependent upon the invalidity of the action brought by the landlord, and thus lies even if the landlord was rightfully entitled to possession.[14] She asserts

---

14. Abuse of process thus stands in marked contrast to the tort of malicious prosecution, which lies only where the action was brought without probable cause and terminated successfully in favor of the aggrieved party. *Ammerman v. Newman*, 384 A.2d 637 (D.C.1978). Whether in fact an action for abuse of process rather than malicious prosecution will lie where the original suit was not supported by probable cause is a point we need not explore here. To allow the use of abuse of process in such a situation would seem to significantly blur the conceptual

distinction between the two torts. *See generally* PROSSER & KEETON ON TORTS ch. 21 ("Misuse of Legal Procedure") (5th ed. 1984). Rather, to the extent that the alleged tort is based upon a lack of sound foundation for the instigation of the possession action, recovery would appear best determined within the limits of malicious prosecution. *Cf. Morfessis v. Baum*, 108 U.S.App.D.C. 303, 305, 281 F.2d 938, 940 (1960) (concluding that complaint stated a case of malicious prosecution, barred by statute of limitations, rather

that the landlord brought the suit for possession in an effort to have her withdraw her option for the basement.

In *Morowitz* itself, we set forth our cautious approach in defining the scope of those torts based on the institution of litigation. We said:

> It is the announced policy of this jurisdiction to allow unfettered access to our courts. In an effort to avoid infringing upon the right of the public to utilize our courts, we are cautious not to adopt rules which will have a chilling and inhibitory effect on would-be litigants of justiciable issues. We are likewise cognizant of our obligations to protect the innocent against frivolous litigation and to make victims of groundless lawsuits whole where they suffer special injury as the result of the suit. Predictably our decisions have evolved in response to these competing interests.

423 A.2d at 197–98. In that case, two physicians had filed a suit against a patient in small claims court for payment of an outstanding medical bill. The patient, through counsel, responded with a counterclaim for malpractice. The trial court dismissed the physicians' subsequent suit against the patient's counsel for abuse of process, malicious prosecution, and professional negligence. In affirming, we invoked our rule that to recover for malicious prosecution, the plaintiff must show "special damages," beyond injuries normally incident to the service of process on anyone involved in a civil suit. We noted that our case reaffirming this minority rule had opted to do so "in the belief that it best promotes this jurisdiction's policy of encouraging free access to the courts." *Id.* at 198, citing *Ammerman v. Newman*, 384 A.2d 637 (D.C.1978).

With respect to the physicians' cause of action for abuse of process, we noted that the issuance of litigation was not actionable, "no matter what ulterior motive may have prompted it." 423 A.2d at 198. Rather, in addition to ulterior motive, there must have been a "perversion of the judicial process and achievement of some end

not contemplated in the regular prosecution of the charge." *Id.* Thus, the fact that the patient filed the malpractice counterclaim with the ulterior motive of coercing settlement was insufficient to bottom liability, where there was no showing that the process was, in fact, used to accomplish an end not regularly or legally obtainable.

This holding is controlling here. With respect to the abuse of process claim, the complaint alleges no more than that "the complaint for possession filed by the defendant was meant to deprive the plaintiffs of their right to exercise their option to rent the basement apartment." However, *Morowitz* establishes that the institution of litigation in itself is insufficient, and, as in *Morowitz*, the trial court was directed to nothing further upon which to bottom the abuse of process action.

Accordingly, the order of the trial court granting summary judgment in favor of the appellee must be

*Affirmed.*

than abuse of process, despite contrary asser-

tion in complaint's caption).