**STERLING MIRROR OF MARYLAND, INC., Appellant,**

**v.**

**Daisy GORDON, Appellee.**

**No. 90–CV–431.**

District of Columbia Court of Appeals.

Submitted March 2, 1992.
Decided Jan. 15, 1993.

Fred Arthur Thompson, II was on the brief, for appellant.

No brief was filed on behalf of appellee.

Before FERREN, WAGNER, and KING, Associate Judges.

WAGNER, Associate Judge:

Appellant, Sterling Mirror of Maryland, Inc. (Sterling), appeals from a judgment awarding appellee, Daisy Gordon (appellee), $1,000 in damages on her counterclaim which alleged that Sterling harassed her by telephone while attempting to collect the balance due on Sterling's contract with her husband, John Gordon, for the installation of mirrors at the Gordons' home. Appellant argues that the trial court erred in finding it liable because the facts do not support a claim under the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692a–1692k (1982) (Debt Collection Act), the D.C. Consumer Credit Protection Act, D.C.Code §§ 28–3801 to –3819 (1991) (Consumer Act), nor any common law cause of action. We agree and reverse.

## I.

Appellant filed a complaint for damages for breach of contract against appellee and her husband, John Gordon, in connection with the installation of mirrors in the Gordons' home. Only Mr. Gordon signed the two contracts which precipitated the dispute, although the second contract reflected the sale of the mirrors to John and Daisy Gordon. The first contract, dated December 6, 1988, was for $4,207.50, and the second, dated January 20, 1989, was for $1,325. Appellee's telephone number was listed as the contact person on the first contract. The trial court found, and it is not challenged on appeal, that the second contract replaced the first.

A dispute arose between the parties about a mirror chipped during installation, and Mr. Gordon refused to pay the balance

due under the contract. In an attempt to collect the balance, Sterling's employee made numerous calls to appellee's place of employment. Sterling then filed suit for breach of contract against appellee and Mr. Gordon. Mrs. Gordon counterclaimed for damages for harassment based on telephone efforts by Sterling to collect the outstanding balance. The trial court entered judgment for Sterling and against John Gordon in the amount of $635 for breach of contract and dismissed Sterling's complaint against Daisy Gordon. The court awarded Daisy Gordon $1,000 in damages on her counterclaim and found against Mr. Gordon on his counterclaim. Sterling appeals from the judgment in favor of Mrs. Gordon on the counterclaim.

## II.

Appellant argues that the trial court erred in imposing liability and awarding damages without statutory authority or a basis in common law. Specifically, Sterling contends that neither the Debt Collection Act nor the Consumer Act applies in this case, and there is no other basis for recovery. We agree.

■■■■ The Debt Collection Act prohibits certain unfair debt collection practices by persons engaged in the debt collection industry. *Crossley v. Lieberman*, 868 F.2d 566, 570 (3rd Cir.1989).[1] It covers the activities of collection agents working on behalf of third parties, rather than those of creditors attempting to collect debts owed to them directly by debtors, as in the instant case. *Id.; Kizer v. Finance Amer-*

*ica Credit Corp.*, 454 F.Supp. 937, 939 (N.D.Miss.1978) ("debt collectors" covered by Act are those who regularly collect debts for others and not creditors of consumers even though debt created between consumer and third person and subsequently assigned to creditor); *Mendez v. Apple Bank For Sav.*, 143 Misc.2d 915, 541 N.Y.S.2d 920, 923 (N.Y.City Civ.Ct.1989) (statute reflects legislature's belief that third party debt collectors are prime source of egregious collection practices). Appellant does not fall within the categories of debt collectors covered. The plain language of the statute does not include actions of a creditor taken in an effort to collect its own debts directly from its debtors. Sterling is a creditor which falls within this exclusion.

■■■■ Here, Sterling was attempting to collect a debt by telephone calls made by its employee to appellee, one of the recipients of the merchandise. An employee of a creditor seeking to recover a debt on the employer's behalf likewise is not within the coverage of the Act. 15 U.S.C. § 1692a(6)(A). Even though appellant called the wife of the actual debtor, the Debt Collection Act does not prohibit such actions insofar as creditors seeking to recover debts due to them as opposed to debts due to third party creditors. Thus, the trial court's decision to award $1,000 in civil damages cannot rest upon the provision of the Debt Collection Act which allows civil damages not to exceed $1,000 to an individual aggrieved by a debt collection

---

1. A "debt collector" is defined in the Act, in pertinent part, as:

 any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (G) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.... The term does not include—

 (A) any officer or employee of a creditor while in the name of the creditor, collecting debts for such creditor.
 * * * * *
 (G) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.
 15 U.S.C. § 1692a(6)(A), (G).

violation under the Act.[2]

■ Nor can support for the trial court's decision be found in the Consumer Act. That Act is limited by its terms to "actions to enforce rights arising from a consumer credit sale or a direct installment loan." D.C.Code § 28–3801 (1991). Neither a consumer credit sale[3] nor a direct installment loan[4] was involved. The basis of appellant's claim was a contract under the terms of which the purchaser paid a deposit and agreed to pay the balance upon delivery and installation of the merchandise.

■ Absent a statutory basis for the trial court's decision awarding damages to appellee, we review to determine whether recovery is based properly upon some common law theory of liability.[5] Appellee contended at trial that she was subjected to telephone harassment by Sterling, and the trial court agreed, as reflected in its finding, and awarded damages. Appellee's testimony reveals no actual damages. At best, appellee's claim is for mental disturbance caused by Sterling's calls. The only possible theory of recovery for mental distress associated with the calls, but one which cannot be made on the facts presented, is one for intentional infliction of emotional distress.[6] Liability for such an action is predicated upon conduct so outrageous and extreme as to exceed the bounds of decency and to be regarded as atrocious and intolerable in a civilized society. *Bown v. Hamilton*, 601 A.2d 1074, 1079 (D.C. 1992); *Waldon v. Covington*, 415 A.2d 1070, 1076 (D.C.1980). Liability will not be imposed for mere indignities or annoyances for this cause of action. *Id.* A prerequisite to recovery is an intent on the part of the alleged tortfeasor to cause a disturbance in another person's emotional tranquility so acute that harmful physical consequences might result. *Id.* at 1077. The requisite intent may be inferred from the outrageous character of the offensive actions or circumstances which impart to a reasonable person the likelihood that emotional or physical harm will result. *See id.* The facts of this case do not support such a claim.

■ Appellee testified that she received telephone calls from someone at Sterling who said that she owed them money and

2. The trial court did not state the basis for its decision. Where a debt collector fails to comply with the provisions of the Debt Collection Act, civil damages may be awarded not exceeding $1,000 for an aggrieved individual. 15 U.S.C. § 1692k(a)(2)(A).

3. The term "consumer credit sale" is defined in the statute as:
 a sale of goods or services in which—
 (A) A credit is granted by a person who regularly engages as a seller in credit transactions of the same kind;
 (B) the buyer is a natural person;
 (C) the goods or services are purchased primarily for a personal, family, household, or agricultural purpose;
 (D) either the debt is payable in installments or a finance charge is made; and
 (E) the amount financed does not exceed $25,000.
 D.C.Code §§ 28–3802(2)(A)–(E). The term also covers certain bailment and lease contracts not pertinent here. *See id.*

4. " '[D]irect installment loan' means a direct installment loan as the term is used in section 28–3308 ...", with certain exclusions irrelevant to our review. D.C.Code § 28–3802(3). Installment loans covered by D.C.Code § —28–3308

include, with certain exceptions not pertinent here, those "to be repaid in equal or substantially equal monthly or other periodic installments, including a loan obtained by using a check, credit card, or other device to access a line of credit...." D.C.Code § 28–3308(a). The cash on delivery transaction involved here does not fall within any of these categories.

5. A correct judgment of the trial court will be affirmed on appeal even if the conclusion is based upon the wrong ground. *Marinopoliski v. Irish*, 445 A.2d 339, 340 (D.C.1982); *Max Holtzman, Inc. v. K. & T. Co., Inc.*, 375 A.2d 510, 513 n. 6 (D.C.1977); *Bakal v. Weare*, 583 A.2d 1028, 1030 (Me.1990); *Small v. Colbeth*, 447 A.2d 82, 82–83 (Me.1982); *see also Gov't Employees Ins. Co. v. Group Hospitalization Medical Serv. Inc.*, 602 A.2d 1083, 1086 (D.C.1992). For that reason, we have considered whether the trial court's decision is affirmable on any other grounds. It is our discharge of this responsibility that our dissenting colleague inaccurately characterizes as "acting ... as [appellee's] lawyer to identify her theories."

6. Although an action for mental distress was not recognized at common law, its existence as an independent tort now is well-established. *Saunders v. Nemati*, 580 A.2d 660, 661 (D.C.1990).

that they had tried to reach her husband. Appellee also testified that her supervisor informed her that Sterling's representatives called and that she suspected she was moved to another work station because of the calls. However, appellee proved no actual damages, and she did not claim that she personally suffered emotional distress as a result of Sterling's actions. Neither Sterling's conduct as described by appellee in her testimony at trial nor its consequences to her as disclosed by the evidence rises to the level required to support a claim for intentional infliction of emotional distress.

We disagree with our dissenting colleague that the record is inadequate for review. On the contrary, appellant designated as the record on appeal, *inter alia*, a transcript of appellee's testimony, all trial exhibits, and a transcript of the trial court's findings of facts and conclusions of law.[7] Our rules and case law do not require an appellant to provide the entire trial transcript nor all pleadings. Rather, "[t]he normal practice is to obtain a verbatim transcript of the pertinent trial proceedings...." *Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982).

D.C.App.R. 10(c)-(f). The rules contain explicit provisions for allowing an appellant to designate only portions of the transcript. *See* D.C.App.R. 10(c). Here, the record reflects that appellant designated and requested all of appellee's testimony and we have no reason to believe that all of the testimony is not before us.[8]

Our dissenting colleague suggests incorrectly that we consider it to be appellee's burden to provide an adequate record. On the contrary, we recognize that it is appellant's burden to provide this court "with a record sufficient to show affirmatively that error occurred." *Cobb*, 453 A.2d at 111. However, we simply conclude that appellant met that burden. Here, appellant designated a record sufficient to show that appellee failed to prove a cognizable claim entitling her to recover damages based on appellant's alleged harassing telephone calls. *Id.* at 111. Appellee's testimony reveals that she was claiming damages for harassment.[9] The trial court's findings and conclusions also show that it ruled for appellee on the counterclaim based on appellant's "unjustifiable harassment" by telephone calls associated with its collection efforts.[10] Therefore, we have considered

---

7. Appellant also specified in the Notice of Appeal that it requested the transcript of appellee's testimony and not just a portion of it. Appellant's "Statement Regarding Transcript" filed with the court also indicates the appellant ordered "[a]ppellee's testimony" without limitation.

8. The trial was brief, and the record reveals the following chronology in the proceedings:

 Case called before the court for non-jury trial. Plaintiff's testimony completed. Plaintiff's oral motion for directed verdict heard and denied. Defendant's testimony completed. Findings of Fact and conclusion of law made a part of the record.

 The court reporter's transcript shows that appellee's only testimony was the direct and cross-examination which is a part of the record on appeal, as designated by appellant. At the conclusion of appellee's trial testimony, the trial court excused her in a customary way: "All right, thank you ma'am. You may step down." Although all of appellee's testimony is a part of the record on appeal, it fails to disclose that she suffered any cognizable injury or damages as a result of the conduct of appellant's agents or employees. Of course, if an appellee deems other portions of the transcript to be necessary, the appellee is required to take steps consistent

with our rules to designate them, D.C.App.R. 10(c)(4), and if necessary, to obtain an order requiring the appellant to order it. D.C.App.R. 10(c)(5).

9. Appellee testified:

 The only thing I want to say the harassment that I went through really caused me a lot of hardship on my job, ... different people calling me constantly about this money ...

 \* \* \* \* \* \*

 I think that is really rotten that I would have to lose time off my job and possibly be in a situation where I have to deal with [my husband] getting sicker because of this ...

 Appellee's testimony is devoid of evidence supporting any other theories of liability or any other claims for damages.

10. The trial court found in pertinent part as follows:

 And as to the claim, counterclaim of Mrs. Gordon, I find that there again on that claim, her testimony is unrebutted and unaddressed by the defendant—by the plaintiff, not the defendant, and that there were a large number of calls to her job with respect to a contract that she didn't sign and had not partici-

whether there is any statutory support or common law theory of recovery based thereon.

 While it is primarily appellant's burden to provide an adequate record, our appellate rules explicitly impose upon appellees the duty of designating additional portions of the transcript which they deem to be necessary. *See* D.C.App.R. 10(c)(4) and (5).[11] Our case law recognizes an appellee's duty to assure that information helpful to his or her cause is not omitted. If portions of the record helpful to appellee are missing, it is incumbent upon appellee to provide it or at least to protest that appellant has not met his obligations under D.C.App.R. 10(a)(1); *Parker v. Stein,* 557 A.2d 1319, 1323 (D.C.1989); *see Dulles v. Dulles,* 302 A.2d 59, 60 (D.C.1973) ("an appellee also has a duty to insure an adequate record so the judgment in the latter's favor may be upheld and may not abdicate that responsibility"). In this case, appellant served upon appellee the required notice of its statement of portions of the transcript which it intended to include in the record. *See* D.C.App.R. 10(c)(3). Appellee did not file and serve on appellant a designation of additional portions to be included as required by the rule. *See* D.C.App.R. 10(c)(4). Where an appellee fails to furnish other portions of the record which might be helpful to him or her, we decide the case only on the record before us. *Parker,* 557 A.2d at 1323. The record before the court supports the decision reached by the court here.

Nor can we agree with our dissenting colleague that we cannot determine from the record available whether the trial court's decision is supportable under a statute or any common law theory without a copy of appellee's counterclaim or other pleadings. We are not reviewing here a motion to dismiss or for summary judgment where an examination of the pleadings is essential. Rather, we have before us the trial testimony of the complainant and exhibits admitted into evidence from which it can be determined readily whether the elements of any cognizable cause of action have been made out or whether any damages recoverable by statute or under common law theories have been proven. Appellee must bear the consequences of a failure to designate any other portions of the transcript. *See id.*

For the foregoing reasons, we conclude that the trial court erred in granting judgment for appellee, Daisy Gordon, on her counterclaim. Accordingly, the judgment for appellee hereby is reversed, and the case is remanded for the entry of judgment for appellant, Sterling Mirror of Maryland, Inc., on appellee's counterclaim.

*Reversed.*

FERREN, Associate Judge, dissenting:

In my judgment, this appeal should fail for want of an adequate record on appeal.

pated in in any way. It—the making of some calls under those circumstances, as the plaintiff has testified that that was a need to have a daytime phone number at work or that there was the customary practice in getting these phone numbers, that makes sense. But as to a non-party to the transaction, the real collection measures would not appropriately go to that person, and I find that—that the line between reasonable notification and even—and even reasonable collection efforts was made, and unreasonable ones or unjustifiable harassment in proceeding against a non-party was crossed in these circumstances, and I find for the counter-plaintiff in the amount of $1,000.

11. D.C.App.R. 10(c)(4) and (5) provides respectively, in pertinent part, as follows:

(4) Designation by appellee of additional transcript. If the appellee deems a transcript of other portions of the proceedings to be necessary, the appellee shall file and serve on the appellant within five days after the service of the statement required by paragraph (3) a designation of additional portions to be included.

(5) Duty of appellee if appellant refuses to order additional transcript. If the appellant shall refuse to order a transcript pursuant to paragraph (4), the appellant shall so notify the appellee within five days after service of the appellee's designation and shall file a copy of the notice with the clerk of the court and with the Clerk of the Superior Court. The appellee within five days thereafter shall either order the designated portions, in which event a statement shall be filed with respect to the ordering of the transcript similar to the aforesaid statement required of the appellant, or shall apply to the Superior Court for an order requiring the appellant to order the transcript.

In *Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110 (D.C.1982), we said:

> A judgment of any trial court is presumed to be valid. A losing party who notes an appeal from such a judgment bears the burden of "convincing the appellate court that the trial court erred." In meeting that burden, *it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred.* The responsibility of perfecting the record remains with appellant and "cannot be shifted to either the trial court or this court."

*Id.* at 111 (citations omitted, emphasis added). Sterling Mirror did not meet the *Cobb* standard requiring appellant to provide a record that assuredly reflects at least a prima facie basis for reversal, because Sterling Mirror did not even provide the pleadings or a transcript that unquestionably showed the nature and scope of the counterclaim under attack on appeal. The majority's speculation about the counterclaim impermissibly attempts to compensate for these imperfections in the record supplied by appellant.

## I.

An appellee has no burden to produce any part of the record on appeal unless appellant has supplied a record showing a prima facie basis for reversal, as our case-law development shows. The earliest decision cited by the majority, *Dulles v. Dulles,* 302 A.2d 59, 60 (D.C.1973), as well as similar cases coming before and after it, do not apply to this case because they concern the efforts of both parties to provide a statement of proceedings and evidence, in lieu of transcript, pursuant to D.C.App.R. 10(j) (currently D.C.App.R. 10(d)). *See Cole v. United States,* 478 A.2d 277, 283–85 (D.C. 1984); *Voight & McMakin Air Conditioning, Inc. v. Property Redevelopment Corp.,* 276 A.2d 239, 241 n. 2 (D.C.1971). In a missing transcript situation, the trial court has the ultimate responsibility for constructing an adequate record for review, *see Cole,* 478 A.2d at 284; *Dulles,* 302 A.2d at 60, and thus, quite naturally, a court rule requires both parties to lend a hand.[1]

The first of our decisions bearing on this case is *Parker v. Stein,* 557 A.2d 1319 (D.C.1989). There, we reversed the denial of a motion for a new trial on punitive damages and emotional distress. Both claims were well pleaded and supported by the transcript included in the record. The only question of the record's adequacy arose with respect to whether there may have been trial judge rulings, omitted from the record on appeal, that would have helped the defendant-appellee if he had supplied them to this court. In *Parker,* therefore, appellant had provided a record adequate to sustain his appeal, in effect shifting the burden of production to appellee to show otherwise—a burden he failed to meet.[2] In contrast, as elaborated in Part II below, Sterling Mirror failed to provide a record plainly reflecting a prima facie basis for reversal.

Since deciding *Parker* in 1989, this court has applied it twice in circumstances similar to those in this case. The first decision, *Smith v. Jenkins,* 562 A.2d 610 (D.C.1989), concerned—as in this case—a "record [that] does not include a copy of the [relevant] counterclaim." *Id.* at 612 n. 2. In affirming, we reiterated *Cobb*'s rule "that the party seeking reversal bears the burden of presenting a record sufficient to show that error occurred, and if the record is insufficient for that purpose, we lack discretion to reverse." *Id.* (citations omitted). Two years later in *Sparrow World Baptist Church v. E.M. Willis & Sons,* 594 A.2d 549 (D.C.1991), we reversed and remanded because "nothing in the record on appeal supports appellee's claim," citing *Parker* for the proposition that "appellee

---

**1.** In remanding for further proceedings in *Dulles,* we faulted the trial court for certifying the inadequate record presented; we did not ascribe that failure to appellee.

**2.** Like the majority opinion in the present case, *Parker* cites *Dulles* outside the context of D.C.App.R. 10(j) (now D.C.App.R. 10(d)), but only for the proposition that responsibility for producing record support for an argument on appeal shifts to appellee *after* appellant has met the burden imposed by *Cobb. See Parker,* 557 A.2d at 1323.

must provide a record on appeal to support its contentions *once appellant has presented a record to support appellant's contentions on appeal," id.* at 552 (emphasis added), as appellant had in *Parker.*

Our caselaw, therefore—from *Cobb* through *Sparrow World Baptist Church*—makes clear that appellee has no burden to produce any part of the record on appeal unless appellant has supplied a record showing a prima facie basis for reversal. Here appellant, Sterling Mirror, has not met this initial burden.

## II.

In the case under review, Sterling Mirror did not supply this court either with a copy of its complaint or with a copy of Mrs. Gordon's counterclaim.[3] Without the counterclaim before us, it is impossible—aside from speculation—to decide whether the trial court improperly awarded damages on that counterclaim.

The trial court did not specify the legal theory behind its ruling on Mrs. Gordon's counterclaim:

> And as to the claim, counterclaim of Mrs. Gordon, I find that there again on that claim, her testimony is *unrebutted and unaddressed* by the defendant—by the plaintiff, not the defendant, and that there were a large number of calls to her job with respect to a contract that she didn't sign and had not participated in in any way.

> \* \* \* \* \* \*

> [T]he counter-claimant . Daisy Gordon [shall] recover of the counter-defendant Sterling Mirror of Maryland the sum of $1,000.00 with interest at the rate of 8%

as provided by law, and her costs of action.

(Emphasis added). By presenting no evidence at trial in response to Mrs. Gordon's counterclaim, Sterling Mirror apparently assumed that the court would find that Mrs. Gordon had not affirmatively proved all the elements of her cause of action. Now, having lost at trial on the basis of that assumption, Sterling Mirror still wants to contend that she has not proved her case without supplying this court with the counterclaim necessary to identify her legal theory or theories and the essential elements of her cause or causes of action.

Moreover, Sterling Mirror has not even supplied a complete transcript of the proceedings; we have only Mrs. Gordon's testimony. Even though the court reporter's transcription of this testimony appears to be complete, I would fault Sterling Mirror—under the circumstances—for ordering only Mrs. Gordon's testimony. Between Mrs. Gordon's testimony and the trial court's findings the court reporter inserted the following entry:

> [There followed further testimony and colloquy, which proceedings were reported but are not requested to be transcribed herein, and the proceedings continued further, as follows:]

This "further testimony" by some unidentified witness or witnesses for Mrs. Gordon[4] may have provided additional proof for some element of her legal theory, whatever it was. I will assume the majority's doubtful proposition—solely for the sake of argument—that this court can comb the trial record, even without access to an appellee's pleadings, to discern whether that party did, or did not, prove some kind of claim. But surely, in that case, this court must

---

**3.** Sterling Mirror filed a brief but Mrs. Gordon did not. The case was assigned to our summary calendar, and neither party asked for oral argument.

**4.** By ordering only Mrs. Gordon's testimony, Sterling Mirror implies that it is the only portion of the proceedings relevant to her counterclaim, but Sterling Mirror provides no proof—other than Mrs. Gordon's failure to demand additional portions of the transcript—on which this court can base such a conclusion. While an

entry in the official record of the proceedings states "Defendant's testimony completed," perhaps suggesting that only one witness appeared, we know that both Mr. and Mrs. Gordon were defendants and that both testified. Although the trial judge mentioned only Mrs. Gordon's testimony in evaluating her counterclaim, the court reporter's notation about "further testimony" raised questions about additional evidence that Sterling Mirror—not this court—has the responsibility to resolve.

have access to the entire transcript in order to evaluate any possible cause of action. Otherwise, the court will have no justification for agreeing (as Sterling Mirror would have us say here) that "[n]o common law basis for [the trial court's] decision can be found."

Nonetheless, without the benefit of pleadings or of a complete transcript, the majority speculates as to what Mrs. Gordon's counterclaim is all about, proffering two statutes and a common law theory, and then shoots each down.[5] The trial court, however, in its findings and judgment, did not cite either statute or any common law theory. It is not for this court to say that missing pleadings and an incomplete transcript could not have justified recovery. My colleagues in the majority—acting first as Mrs. Gordon's lawyer to identify her theories, and then as appellate judges to reject them—may well be right that they have identified the only possible theories of recovery for a counterclaim,[6] and that the record, if completely revealed to us, would not support liability under any of them. But the majority may be wrong, and its approach sets a very bad precedent.

Think of the implications. There can be a multi-count complaint and counterclaim in a complex field of commercial law where certain, very specific allegations are required for each. If a losing party, in taking an appeal, does not provide us with the pleadings and all relevant portions of the transcript, I do not see how we, as judges, can properly conclude that the prevailing party and the trial judge or other trier of fact were wrong. If an appellant, in a brief, purports to state the facts and then throws out legal arguments that may or may not be dispositive, but cannot be tested against a formal complaint and a complete record, this court cannot responsibly decide the case.

I believe we have only one choice here: to affirm the judgment for lack of an adequate record on appeal to justify any other disposition.

---

5. After noting in its brief that the trial court "did not state the basis of the decision" and merely asserting that "[n]o common law basis for such a decision can be found," Sterling Mirror concludes that the court must have "erroneously based its decision upon either the Federal or the District of Columbia statutes regulating debt collection, neither of which are applicable to this case."

6. Based on the portion of the transcript filed by Sterling Mirror, Mrs. Gordon testified, in part:

And before I—before I got to work, came back to work because I had been out for a few weeks, my supervisor had been telling me that someone had been calling me and something had to be done about it because she couldn't put up with it any longer because they were constantly calling and asking to speak to me. They were from Sterling Mirrors.

So, once I came back to work then, you know, I started getting these calls from a man, and he was telling me the same thing. He said you'll have to pay this money, and I said money, for what? And he said you and your husband had purchased some mirrors. I told him, I said, I haven't purchased any mirrors.

\*　　\*　　\*　　\*　　\*　　\*

The only thing I want to say the harassment that I went through really caused me a lot of hardship on my job, because I work in the same—I work for the same people, but I was moved, and I think the reason why I was moved is because they got tired of the harassment. And my supervisor told me even after I was moved that the calls continued to come in from Sterling Mirrors, different people calling constantly about this money, and so, I just, you know, I just told her like this. I am gone. There is nothing I can do. But on my husband's behalf, he is a very sick man. He is 100 percent disabled veteran. He doesn't have any problems with paying his bills because we have a pretty nice home and stuff like that, and I think that is really rotten that I would have to lose time off my job and possibly be in a situation where I have to deal with him getting sicker because of this, because it is hard pushing a wheelchair when you don't have to for some stuff, and you losing your leave and all this kind of stuff.