Vincent J. MESSINA, Appellant,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, a Foreign Corporation.

Nos. 91–7175 & 92–7066.

United States Court of Appeals, District of Columbia Circuit.

Argued March 1, 1993.

Decided July 6, 1993.

Thomas Fortune Fay, Washington, DC, argued the cause for appellant. With him on the brief was Sol Z. Rosen, Washington, DC.

Alfred F. Belcuore, Washington, DC, argued the cause for appellee. Melvin R. Wright, Washington, DC, also entered an appearance for appellee.

Before MIKVA, Chief Judge, and WALD and BUCKLEY, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Vincent Messina appeals an order of the district court dismissing his bad faith tort claim against Nationwide Mutual Insurance Company. Mr. Messina also challenges the district court's attorney fees award. We find no merit in Mr. Messina's arguments and, accordingly, affirm the district court's rulings.

## I. BACKGROUND

In November 1985, Mr. Messina was a passenger in a taxi that ran a red light and collided with another car. The car with which the taxi collided was insured by Nationwide. At the time, Mr. Messina did not own a car, and thus did not have any automobile insurance. As a result, he sought reimbursement for his injuries from Nationwide pursuant to the Compulsory/No–Fault Motor Vehicle Insurance Act of 1982, D.C.Law 4–155, 29 D.C.Reg. 3491 (Aug. 13, 1982) (designated as D.C.Law 4–155 at 29 D.C.Reg. 4389 (Oct. 8, 1982)) (codified as amended at D.C.Code Ann. §§ 35–2101 to 35–2114 (1988)).

Nationwide paid Mr. Messina's medical expenses without dispute. The parties differed, however, over the amount to which Mr. Messina was entitled for the income he lost due to his injuries. Although Mr. Messina had initially requested $4,800 in work loss benefits, Nationwide paid him only $1,143.79.

On June 29, 1988, Mr. Messina, a District of Columbia resident, filed suit in district court against Nationwide, an Ohio corporation. Count I of Mr. Messina's complaint claimed that he was entitled to $25,000 under the D.C. no-fault statute. In answers to interrogatories, Mr. Messina later stated that he had lost sixteen work days for a total of $6,400 in wages, and that he had also foregone $32,500 in consulting fees because he was unable to travel in the months immediately following the accident. Count II of Mr. Messina's complaint alleged that he was entitled to $100,000 in compensatory damages and $1 million in punitive damages because Nationwide had acted in bad faith by not providing full reimbursement.

By October 1988, Nationwide admitted that it had underestimated the amount of work loss benefits payable to Mr. Messina by relying on figures that understated his annual earnings. Nationwide nevertheless argued that under the "priorities for payment of ... benefits" provision of the D.C. no-fault law, D.C.Law 4–155, § 8, 29 D.C.Reg. at 3504 (codified as amended at D.C.Code Ann. § 35–2107), another insurer—specifically, the insurer of the operator of the taxi—should be responsible for the payment of benefits to Mr. Messina. In the alternative, Nationwide claimed that it could not be held liable for the lost consulting fees, and in any event that work loss recovery was limited by statutory ceilings of $2,000 per month and $24,000 in total.

In accordance with its interpretation of the no-fault statute, Nationwide moved for leave to file a third party complaint against the operator of the taxi. On July 7, 1989, the district court granted Nationwide's motion and, because addition of this party would destroy diversity of citizenship, it dismissed the case for lack of subject matter jurisdiction. The district court's decision was, however, reversed by this court because taxicabs were exempt from the relevant provisions of the no-fault law as it existed at the time of the accident. *See Messina v. Nationwide Gen. Ins. Co.*, No. 89–7221, 1990 WL 88657 (D.C.Cir. June 13, 1990). The case was set for trial on August 13, 1991.

On the morning the trial was to begin, Nationwide moved to dismiss Count II of Mr. Messina's complaint on the authority of *Washington v. Government Employees Ins. Co.*, 769 F.Supp. 383 (D.D.C.1991) ("*GEICO*"), which held that no cause of action for bad faith denial of an insurance claim exists under D.C. law, *see id.* at 386–87. The district court granted Nationwide's motion, commenting that the reasoning of *GEICO* "is

equally applicable to the facts of this case." *Messina v. Nationwide Gen. Ins. Co.*, No. 88–1774, mem. order at 1 (D.D.C. Aug. 20, 1991). The parties then agreed to the entry of a consent judgment on Count I under which Nationwide would pay Mr. Messina a total of $6,603.40 in work loss benefits.

Mr. Messina was initially represented in this litigation by Sol Rosen. Thereafter, he was represented by Thomas Fay. After the district court entered the consent judgment, the two attorneys filed applications for the fees incurred in their efforts to recover the overdue work loss benefits. The payment of such fees is authorized by the no-fault law, which provides that

> [a]n attorney may receive a reasonable fee for advising and representing a claimant in an action for personal injury protection benefits which are overdue. The fee shall be paid by the applicable insurer ... if a court finds that the insurer did not promptly pay the amount due.

D.C.Code Ann. § 35–2110(e)(1). The attorneys sought a total of $36,261, which included an amount for a legal research service.

After conducting an evidentiary hearing, the district court issued an order awarding the attorneys $16,854. *Messina v. Nationwide Gen. Ins. Co.*, No. 88–1774, mem. order at 7 (D.D.C. Mar. 12, 1992). The court found a number of hours claimed by Mr. Rosen to be "duplicative," "excessive," or "not ... adequately substantiated," and denied reimbursement for them. *See id.* at 3–5. The court further determined that Nationwide should not be required to pay for costs arising from Mr. Messina's change of lawyers. *Id.* at 5. The court observed that the case was "not a complicated one," and that "[r]easonable attorneys' fees in this case would be the fees that one attorney would incur in litigating this matter." *Id.* Accordingly, the court held that Mr. Rosen could not recover for hours spent after Mr. Fay became Mr. Messina's counsel, and that Mr. Fay could not recover for what the court deemed "start-up time needed to familiarize himself with the case." *Id.* Finally, the district court denied recovery for one-third of Mr. Rosen's time and three hours of Mr. Fay's time on the ground that this time was spent on the bad faith claim, which had been dismissed. *See id.* at 6–7.

## II. Discussion

### A. The Tort of Bad Faith Denial of an Insurance Claim

■ Because jurisdiction over this suit in the district court was founded on diversity of citizenship pursuant to 28 U.S.C. § 1332 (1988), the substantive law of the District of Columbia governs this dispute. *See Schleier v. Kaiser Found. Health Plan of the Mid–Atlantic States, Inc.*, 876 F.2d 174, 180 (D.C.Cir.1989) ("Although the Rules of Decision Act, and hence *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), do not strictly apply with respect to D.C. law, we apply D.C.'s substantive law analogously for reasons of uniformity and respect for the D.C. Court of Appeals."). The Supreme Court held in *Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), that "a court of appeals should review *de novo* a district court's determination of state law." *Id.* 499 U.S. at ——, 111 S.Ct. at 1221.

■ The D.C. Court of Appeals has not squarely addressed the question whether bad faith denial of an insurance claim constitutes an independent tort under D.C. law. The district court has considered the issue in two separate reported cases, but these cases are directly in conflict. *Compare GEICO*, 769 F.Supp. at 387 ("District of Columbia law does not recognize the tort of bad faith denial of an insurance claim.") *with Washington v. Group Hospitalization, Inc.*, 585 F.Supp. 517, 520 (D.D.C.1984) (holding that the District of Columbia is among the "[m]any jurisdictions [that] have recognized a cause of action in tort for the bad faith refusal of an insurer to pay").

We find it unnecessary to divine whether the D.C. Court of Appeals would recognize a cause of action for bad faith refusal to pay insurance benefits. In our view, even if the D.C. Court of Appeals would recognize the bad faith tort, it would not allow a plaintiff in Mr. Messina's position to recover under that tort. Indeed, the critical fact about this case is that Mr. Messina was not a party to the

insurance contract with Nationwide, and thus he cannot assert a tort that logically depends on a contractual relationship between the plaintiff and the defendant.

■ The bad faith tort is grounded on the covenant of good faith and fair dealing that is implicit in all contracts, supplemented by the idea that insurance contracts have special characteristics that warrant heightened liability for breach of that covenant. *See Braesch v. Union Ins. Co.*, 237 Neb. 44, 464 N.W.2d 769, 774–75 (1991) (noting the unique "public interest" character of the insurance industry, the fact that an insured seeks to protect against loss rather than gain commercial advantage, and the unequal bargaining power of insurers and insureds); *see also Kranzush v. Badger State Mut. Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256, 261 (1981) ("The heart of the [bad faith] tort ... is the fiduciary relationship between the insurer and the insured and the insurer's breach of the duty of good faith and fair dealing implicit in every contract."). When there is no contractual relationship between the claimant and the insurer, however, the implied covenant does not exist, and hence there is no doctrinal basis for holding the insurer liable in tort.

Adhering to this theory, courts in a number of jurisdictions that recognize the bad faith tort have determined that it is not available to individuals like Mr. Messina who are "strangers" to the insurance contract. *See Herrig v. Herrig*, 844 P.2d 487, 491–92 (Wyo.1992); *Bates v. Allied Mut. Ins. Co.*, 467 N.W.2d 255, 258–59 (Iowa 1991); *O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525–26 (Alaska 1988); *Auclair v. Nationwide Mut. Ins. Co.*, 505 A.2d 431, 431 (R.I.1986); *Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364–65 (Okla.1984); *Kranzush*, 307 N.W.2d at 259–65; *Linscott v. State Farm Mut. Auto. Ins. Co.*, 368 A.2d 1161, 1163–64 (Me.1977). By contrast with this wealth of authority against his position, Mr. Messina was unable to cite even a single case to support the claim that a plaintiff who is not a party to the insurance contract may recover in tort for an insurer's bad faith refusal to pay benefits.

**B. Attorney Fees**

■ Under both federal and D.C. law, an award of attorney fees is subject to reversal only if it represents an abuse of the trial court's discretion. *See, e.g., Copeland v. Marshall*, 641 F.2d 880, 901 (D.C.Cir.1980) (en banc); *International Comm'n on English in the Liturgy v. Schwartz*, 573 A.2d 1303, 1306 (D.C.1990); *Frazier v. Franklin Inv. Co.*, 468 A.2d 1338, 1341–42 (D.C.1983). Mr. Messina argues that the district court erred by (1) finding that his attorneys were not entitled to reimbursement for the portion of their time that was devoted to the bad faith claim, and (2) reducing Mr. Rosen's hours on the theory that the case was not sufficiently complex to warrant more than one attorney. We conclude, however, that the district court was well within its discretion in making these determinations and arriving at the $16,854 fee award.

■ Mr. Messina contends that even if he is not entitled to recover in tort, his attorneys' efforts to establish that Nationwide acted in bad faith should be compensable. Mr. Messina's argument is premised on the notion that attorney fees may not be awarded unless there is evidence of bad faith on the part of the insurer. While this view may accurately depict the state of the law prior to enactment of the D.C. no-fault statute, *see Continental Ins. Co. v. Lynham*, 293 A.2d 481, 483–84 (D.C.1972), the statute made clear that the sole prerequisite for an attorney fees award is that "the insurer did not promptly pay the amount due." D.C.Code Ann. § 35–2110(e)(1). Thus, as long as Mr. Messina's attorneys could establish that benefits were overdue, any efforts to prove that Nationwide acted in bad faith were superfluous in light of the dismissal of the tort claim.

■ Mr. Messina's second argument is that the district court unfairly penalized him by denying reimbursement for hours incurred because he employed two different attorneys during the litigation. According to Mr. Messina, Mr. Fay did the bulk of the trial work, while Mr. Rosen's role was to oversee the discovery process and handle the appeal on the jurisdictional issue. Mr. Messina then argues that the district court's

decision effectively denied him the option of having separate trial and appellate counsel.

We find Mr. Messina's argument to be without merit. We agree with the district court that this case was not so complex and the amount in controversy was not so great as to require two different lawyers. *See Frazier v. Center Motors, Inc.,* 418 A.2d 1018, 1025 (D.C.1980) (indicating that a trial court should consider, *inter alia,* the "difficulty of the question" and "[t]he amount involved and the results obtained" in arriving at a fee award).

### III. CONCLUSION

We affirm the district court's dismissal of Count II of Mr. Messina's complaint. We do so on the narrow ground that Mr. Messina was not a party to the insurance contract and do not reach the broader question of whether the D.C. Court of Appeals would recognize the tort of bad faith refusal to pay insurance benefits. We also affirm the district court's attorney fees award.

*So ordered.*