Jesse **WITHERSPOON, Jr., Individually and as Personal Representative of the Estate of his wife, Julie Anne Witherspoon, Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED,**
Defendant.

Civil Action No. 96–02322.

United States District Court,
District of Columbia.

May 2, 1997.

⟲16

**458**

George A. Teitelbaum, Washington, DC, for Plaintiff.

James K. Archibald, Vanable, Baetjer, Howard & Civiletti, Washington, DC, for Defendant.

### MEMORANDUM

JUNE L. GREEN, District Judge.

Before the Court are Defendant's Motion to Dismiss Counts I through III and V through IX of Plaintiffs' Complaint with prejudice for failure to state a claim and Motion to Strike portions of Plaintiffs' Complaint. For the reasons stated below, the motion to dismiss is granted for Counts II, III, VI and IX. Plaintiff is granted leave to amend Counts I and V to plead satisfactorily fraud by nondisclosure and to amend the prayer for relief. Furthermore, Plaintiff is granted leave to amend the Complaint to satisfy the short and plain pleading requirement.

### I. BACKGROUND

Plaintiff is a widower, suing Defendant cigarette manufacturer in tort on behalf of himself and his deceased wife ("Decedent"). Plaintiff claims the actions of Defendant caused his wife's death and his resulting emotional distress. Plaintiff alleges Decedent smoked cigarettes manufactured by Defendant for more than 38 years. (Compl.¶ 12). According to Plaintiff, Decedent became addicted to cigarettes and was unable to quit, despite suffering ongoing health problems beginning in the early 1960's. (Id. ¶ 14). Prior to her death in 1994, Decedent suffered from chronic obstructive pulmonary disease, hypertension, asthma, and emphysema. (Id. ¶ 15). Plaintiff describes the cause of Decedent's death on November 28, 1994, as a stroke brought on by respiratory failure caused by emphysema. (Id.) Plaintiff claims Defendant is responsible for the death and suffering resulting therefrom. Plaintiff alleges this is due to the claimed scientifically proven link between cigarette smoking and illnesses such as those suffered by Decedent. Plaintiff alleges that nicotine is highly addictive, that Defendant is aware of that, and that Defendant manipulates nicotine levels in cigarettes in order to profit from increased sales generated by such addiction.

Plaintiff pleads fraud, constructive fraud, intentional infliction of emotional distress, negligence, violation of the District of Columbia's consumer protection statute, breach of express and implied warranties, strict liability for product defect, and wrongful death as the bases of Defendant's liability.

The case was originally filed in the Superior Court for the District of Columbia on August 13, 1995, whereafter Defendant removed the case to federal court based on diversity of citizenship. 28 U.S.C. § 1332(a)(1). District of Columbia law applies. Defendant has elected to challenge the Complaint's adequacy by these motions before filing an Answer.

## II. DISCUSSION

Defendant seeks dismissal of Count I (fraud), Count II (constructive fraud), Count III (intentional infliction of emotional distress), Count V (violation of the District of Columbia's consumer protection statute), Count VI (breach of express warranty), Count VII (breach of implied warranty), Count VIII (strict liability) and Count IX (equitable relief) for failure to state a claim. The standard for dismissal here is given in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), which states that a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff could not prove any set of facts in support of his claims that would entitle him to relief. Any favorable inferences supporting such allegations must be given to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). "However, legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." 2A Moore's Federal Practice, § 12.07, at 63 (2d ed.1986) (footnote omitted).

### A. Count I Fraud

Defendant requests that this claim be dismissed for failure to state a claim either under the common law definition of fraud or pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendant's motion to dismiss the count is denied, and Plaintiff is given leave to amend the count to state a claim for fraud adequately.

■ The elements of common law fraud are: "(1) a false representation, (2) in reference to a material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). "Nondisclosure or silence . . . may constitute fraud [as well]." *Id.* In addition to the elements of common law fraud, Federal Rule of Civil Procedure 9(b) requires that "[in] all averments of fraud . . . the circumstances constituting fraud shall be stated with particularity."

The fraud count alleges that Defendant both misrepresented and omitted the addictive nature of nicotine in congressional testimony, the mass media and by other communications to Plaintiffs, and that Defendant failed to disclose its intentional manipulation of nicotine levels in cigarettes. Plaintiff alleges that Defendant was aware at least by the early 1960's that nicotine is addictive and cites internal memos of Defendant ranging in time from 1965 to 1980 in support. (Compl. at ¶¶ 23–27, 36.) In particular, Plaintiff alleges that a 1965 company memorandum indicates Defendant both knew of nicotine's addictive quality and was attempting to manipulate nicotine amounts in cigarettes. (*Id.* at ¶ 36.) Plaintiff claims that Defendant's duty to disclose arises because of Defendant's exclusive access to material facts and Plaintiff's inability to discover the addictive nature of nicotine. Plaintiff further claims that he and Decedent reasonably relied on the misrepresentations and omissions of Defendant and began smoking without fear of addiction.

■ Plaintiff notes two types of communication used by Defendant: advertisements and congressional testimony. Plaintiff alleges that Defendant omitted the fact of nicotine's addictive nature and its manipulation of nicotine levels in its promotional activities. In addition, the Complaint refers to congressional testimony from 1994 and 1996 where the "Tobacco Companies" denied the addictive nature of nicotine. (Compl. at ¶¶ 30–31.) Insofar as quoted statements in the Complaint were made 38 years after Decedent began smoking and immediately prior to her death, Plaintiff has not alleged misrepresentations that could have induced Decedent to begin smoking. Reliance upon such statements is a necessary part of this cause of action.

■ With regard to advertisements, however, the Court concludes that fraud by nondisclosure is a viable cause of action. The point of fraud by nondisclosure is that Plaintiff claims to have relied upon what the Defendant did not say for 38 years: that nicotine is addictive and that Defendant ma-

nipulated the level of nicotine in its product. The congressional testimony recounted in the Complaint implies that Defendant has never admitted publicly that nicotine is addictive.[1] This supports a claim for fraud by nondisclosure.

In a case decided under Kansas state law, *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan.1995), the court found that the plaintiff's allegations that the cigarette manufacturer had willfully concealed knowledge of the fact that smoking caused cancer and vascular disease were sufficient to state a claim for fraudulent concealment. The complaint there stated that R.J. Reynolds should have disclosed hazards documented by their own and outside scientific research. An earlier opinion from the same case held that if the defendant had better knowledge of the nature of cigarettes at the time the plaintiff started smoking, it had an obligation to disseminate such information to its consumers. *Id.* at 1526.

Though courts in the District of Columbia have not dealt with similar facts alleged by a plaintiff, this case is analogous to the usual fraud by nondisclosure situation. Generally, when defendants raise failure-to-state-a-claim arguments, the plaintiffs have specifically alleged what statements were made. Then the court is faced with deciding if certain information that was left out could constitute a material nondisclosure. *See e.g., In re Newbridge Networks Sec. Litig.*, 926 F.Supp. 1163, 1170 (D.D.C.1996)(finding plaintiff's allegations that defendant's statements were misleading due to omissions stated an actionable claim and raised questions of fact to be resolved). Here, Plaintiff has not pleaded what incomplete statements were actually made by Defendant. In other nondisclosure cases, plaintiffs alleged those statements that defendants made, but were unable to show that material facts were not disclosed. One District of Columbia case states the claim of fraud by non-disclosure well: "Plaintiffs do not argue that the [allegedly fraudulent] statements were false; in-

stead plaintiffs argue that the statements were so incomplete as to be misleading. That argument raises questions for the finder of fact that may not be resolved in a motion to dismiss." *Newbridge*, 926 F.Supp. at 1170.

The court in *In re Newbridge Networks Sec. Litig.*, 767 F.Supp. 275, 282 (D.D.C.1991)("*Newbridge II*"), required a plaintiff to allege "what statements were made in what documents or in what context, the time and place of such statements, who made the statements, the manner in which the statements were misleading, and what the defendants obtained as a consequence of the statements." In *Newbridge II*, the plaintiffs survived a Rule 9(b) challenge on one count by pleading that when the defendant made an announcement that it had been chosen for a huge contract, it committed fraud by not disclosing the existence of structural deficiencies. *Id.* Plaintiff has alleged the fraudulent concealment of specific facts, including Defendant's knowledge of the nature of nicotine and its manipulation of nicotine levels, but has not specifically alleged where and when positive statements were made from which that information was omitted.

In addition, Plaintiff has not fulfilled the "time, place, and content" aspect of Rule 9(b). It is safe to assume that both Plaintiff and Defendant know that Defendant has advertised cigarettes for many years. It is almost as safe to assume that both are aware that Defendant has never advertised nicotine's addictive nature. That is not sufficient, however, to dispel the particularity requirement. Plaintiff must refer to some specific advertisements that he and his Decedent were likely to have seen when they began and continued to smoke. In *Burton*, the plaintiffs in fact presented over 70 instances of print and television advertisements. 884 F.Supp. at 1527.

■ The Court concludes that Plaintiff has all but sufficiently pleaded common law fraud

1. In *Castano v. The American Tobacco Company*, 870 F.Supp. 1425, 1433 (E.D.La.1994), a Louisiana district court referred to the 1994 hearings where tobacco industry executives uniformly denied the addictive nature of nicotine, noting that afterward Philip Morris bought full-page newspaper advertisements stating in part, " 'Philip Morris does not believe cigarette smoking is addictive.' "

by nondisclosure. Although Plaintiff has adequately pleaded the duty to disclose nondisclosed information, he must give examples of the statements that Defendant actually made to the public during the relevant time frame. Plaintiff's mistake is in not describing the actual advertising and correspondence with specific dates, times, and descriptions.

Rule 15(a) of the Federal Rules of Civil Procedure allows parties to amend pleadings freely before responsive pleadings are filed or otherwise upon receiving leave of court. Because this case was removed to federal court by Defendant, and Plaintiff has not yet amended his complaint, he will be given leave to amend the Complaint to cure the Rule 9(b) defect; doing so should satisfy the common law pleading requirements as well. *See Philadelphia v. Lead Industries Assoc.*, No. 90–7064, 1992 WL 98482 at *5 (E.D.Pa. Apr.23, 1992), *aff'd on other grounds* 994 F.2d 112 (3d Cir.1993) (allowing plaintiffs to amend their complaint alleging fraud for failure to disclose knowledge of the dangers of lead paint to meet the federal particularity requirement).

## B. Count II Constructive Fraud

Plaintiff's Count II fails to state a claim for constructive fraud and must be dismissed. In order to succeed on a constructive fraud claim, Plaintiff must first demonstrate that a confidential relationship exists between him and Defendant. A confidential relationship is defined as a relationship in which one party has gained the "trust and confidence" of the other, enabling the first party to exercise extraordinary influence over the other. *Goldman v. Bequai*, 19 F.3d 666, 673–74 (D.C.Cir.1994). The court in *Bequai* gave factors to use in determining the relationship: mental capacity, age, education, business the extent to which the alleged victim entrusted her affairs to the other party. *Id.*

First, the Complaint itself does not support a cause of action for constructive fraud. There are no allegations of a confidential relationship; in fact Plaintiff's constructive fraud count does not allege any further facts than does his count for fraud and deceit. Despite not alleging how the manufacturer-consumer relationship in this case establishes a confidential relationship in the Complaint, Plaintiff does explain the issue further in his Response to Defendant's Motion to Dismiss ("Response"). Plaintiff describes the 38–year "longstanding" relationship as existing "through her continued use of the product, her continued use of promotional activities offered by defendant[ ], and by her continued addiction to the products sold by defendant." (Response at ¶ 11.) Plaintiff argues the relationship is confidential because it "far exceeded the normal consumer relationship" due to the length of time, promotional literature mailed, television advertisements, and "personalized mail sent directly to her." (*Id.*) The Plaintiff appears to be arguing that time plus mail, in a consumer-manufacturer relationship, is by definition one of confidence.

This characterization simply does not resemble a confidential relationship as defined in *Scheve v. McPherson*. Cases involving constructive fraud often are based upon business transactions requiring contracts and negotiations between the individual parties, quite a different situation from purchasing cigarettes at a local store. Establishing a confidential relationship is a difficult burden. In *Roberts–Douglas v. Meares*, 624 A.2d 405 (D.C.App.1992), the District of Columbia Court of Appeals found that not even clergyman-parishioner relationships are necessarily confidential. In that case the District of Columbia Court of Appeals held that not every clergyman is automatically in a confidential relationship with his parishioners, and that this is true even for regular churchgoers who sit in the pews listening to sermons. "The principal factor leading to a finding of a confidential relationship in many of the reported cases was the existence of continuous influential contacts, generally on a one-to-one basis[.] ... Sermons by Bishop Meares to his entire flock ... are not the stuff from which a confidential relationship is derived." *Id.* at 422. Applying the reasoning in *Meares*, Plaintiff is only one of millions of consumers and potential consumers targeted by Defendant's advertisements, and even mailings.

The strongest part of Plaintiff's argument for the existence of a confidential relationship is the personalized mail sent by Defendant, and responded to repeatedly by Decedent. Even so, this contact is not enough to create a relationship of trust that could be likened to one with a close family member, attorney, or a priest from whom one gets personal counseling. Consumers are bombarded by promotional mailings all the time. There are no allegations that Decedent was particularly susceptible to such contact. Accordingly, Plaintiff has not pleaded facts that could support a confidential relationship and, as a result, this count fails to state a claim for constructive fraud.

## C. Count III Intentional Infliction of Emotional Distress

■■■ Plaintiff similarly fails to state a claim for intentional infliction of emotional distress. The elements of intentional infliction of emotional distress under District of Columbia law are as follows: "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Howard Univ. v. Best,* 484 A.2d 958, 985 (D.C.1984). The determination of "outrageous" behavior is a matter of law for the court to decide. *Drejza v. Vaccaro,* 650 A.2d 1308, 1316 (D.C.1994). The District of Columbia has adopted this definition from the Restatement (Second) of Torts § 46 cmt. h (1965). However, a "case must go to the jury if reasonable people could differ on whether conduct is extreme and outrageous." *Anderson v. Prease,* 445 A.2d 612, 613 (D.C.App.1982).

■■■ Plaintiff's Complaint alleges that Defendant's course of conduct from the time Plaintiff and Decedent began smoking until the present, amounts to extreme and outrageous behavior. Plaintiff claims that the facts that establish the earlier causes of action, knowledge of the nature of nicotine and the deliberate efforts to make addicts of cigarette consumers, are "beyond the bounds of reasonableness." (Compl. at ¶ 64.) Plaintiff alleges that the outrageous behavior of Defendant caused emotional distress to Plaintiff, through the illness and death of his wife, and to Decedent herself, through her suffering prior to death.

■■■ Defendant raises two arguments in support of dismissing the count. First, Defendant argues that the type of conduct alleged simply cannot be characterized as outrageous. Defendant cites *Massengale v. Ogu,* No. 91–489–LFO, 1992 WL 25894 (D.D.C. Jan.28, 1992), in support of dismissing the claim for intentional infliction of emotional distress. There the District Court noted that "fraud alone is not enough to state [such] a claim ... under District of Columbia law. Such a claim must include some outrageous act ..." Id. at *1. Plaintiff's position, however, is that the nature of Defendant's acts is extreme and outrageous, going far beyond ordinary fraud. District of Columbia courts apply a "very strict standard of liability" for intentional infliction of emotional distress. *Bernstein v. Fernandez,* 649 A.2d 1064, 1075 n. 17 (D.C.1991).

In *Drejza,* the court described outrageous conduct as "so extreme in degree, as to go beyond all possible bounds of decency ... and to be regarded as atrocious and utterly intolerable in a civilized community." *Drejza,* 650 A.2d at 1312 n. 10. One example of outrageousness in the context of corporate activity is found in a toxic tort case decided by the Supreme Court of California: *Potter v. Firestone Tire & Rubber Co.,* 6 Cal.4th 965, 25 Cal.Rptr.2d 550, 863 P.2d 795 (1993). The court ruled that corporate activity, which included the conscious decision of certain corporate officials to dump hazardous waste at a landfill not intended to receive such waste with the sole desire to cut costs, knowing the action was against company policy and the law, constituted outrageous behavior for the purposes of intentional infliction of emotional distress. The court noted that particularly important to the outrageousness of the behavior was that the company knew of the hazards of the waste and deliberately disregarded those hazards, in an attempt to keep up profits. *Id.* 25 Cal.Rptr.2d at 557–58, 863 P.2d at 802. There is certainly an analogy to the present case. One could characterize Defendant's behavior as the deliberate concealment of known hazards for the purpose of increasing company profits and therefore

outrageous. Notwithstanding such a characterization, the Court refrains from deciding this issue because the Plaintiff cannot satisfy the next element of the cause of action, intent.

■ Defendant argues that corporate behavior geared toward the public at large (by Plaintiff's admission, Defendant was attempting to get as many consumers as possible to use its product) cannot fulfill the intent requirement. *Sterling Mirror of Maryland, Inc. v. Gordon,* 619 A.2d 64 (D.C.1993), describes as a prerequisite to recovery "an intent on the part of the alleged tortfeasor to cause a disturbance in another person's emotional tranquillity so acute that harmful physical consequences might result." *Id.* at 67 (citation omitted). The court in *Potter* after finding the defendant's actions to be outrageous, had to dismiss the complaint on the ground that intent was not met. 25 Cal. Rptr.2d at 574–75, 863 P.2d at 820. The court found that the defendant had not directed its actions toward the plaintiffs, nor had its actions been "calculated to cause severe emotional distress." *Id.* The intent requirement implies that a defendant must both know of the danger and know the danger would affect a particular plaintiff. The California elements of intentional infliction of emotional distress are the same as those under District of Columbia law.

In *Meares,* one of the plaintiff's claims was that Rev. Meares had not only defrauded his parishioner by threatening eternal damnation if the congregation did not donate sufficiently, but also caused emotional distress. 624 A.2d at 410. The court dismissed the claim, stating that the plaintiff failed to demonstrate any intent of the defendant to cause such distress. The plaintiff's claim failed because the defendant had merely preached

sermons to the entire congregation; there were no individual exhortations. *Id.*

Defendant argues that every reported District of Columbia decision involves "an individual acting outrageously toward another individual." (M.D. at 10.) The Court agrees. The majority of these cases involve ongoing relationships such as employer-employee, doctor-patient and landlord-tenant.[2] Other cases did not necessarily involve a pre-existing relationship, but still involved individuals acting toward individuals.[3] An analogous case was decided by the Third Circuit where a claim for intentional infliction of emotional distress was dismissed for failure to state a claim, *Angus v. Shiley Inc.,* 989 F.2d 142 (3d Cir.1993). There, the plaintiff claimed that the manufacturer of a faulty heart valve engaged in behavior directed at a class of consumers, not him personally. The court dismissed the claim because the plaintiff had not alleged that such conduct "was likely to have a special impact on him as distinguished from a large group of persons." (M.D. at 10.)

Precedent demonstrates that the tort of intentional infliction of emotional distress requires a high standard of intent, that is, the intent must be to actually cause emotional harm and it must be specifically directed toward the person complaining of emotional harm. As a result, even if Defendant's activity could be considered outrageous, Plaintiff has failed to plead that Defendant specifically intended to cause harm, emotional or otherwise, to the Plaintiff and Decedent. Accordingly, this count is dismissed.

### D. Count V Violation of District of Columbia Deceptive Trade Practices Statute

■ Plaintiff claims Defendant has violated unspecified portions of District of Columbia's deceptive trade practices statute.[4] This

---

2. *See generally Howard University v. Best,* 484 A.2d 958 (D.C.1984)(employee sued university for harassment); *Anderson v. Prease,* 445 A.2d 612 (D.C.App.1982) (patient successfully sued her psychiatrist); *Jonathan Woodner Co. v. Breeden,* 665 A.2d 929 (1995), *reh'g denied,* 681 A.2d 1097 (D.C.App.1996) (tenants successfully sued landlord over poor housing conditions and intimidation).

3. *See generally Drejza v. Vaccaro,* 650 A.2d 1308 (D.C.1994) (rape victim sued police officers she dealt with after reporting rape); *Sterling Mirror of Maryland, Inc. v. Gordon,* 619 A.2d 64 (D.C.App.1993) (counterclaiming debt collection lawsuit, defendants claimed harassment by debt collector).

4. Potentially relevant provisions of the Statute are as follows:

claim is analogous to the fraud by nondisclosure claim. Although there are no District of Columbia cases in which Rule 9(b) has been applied to the provisions triggered by this case in deceptive trade practices actions, courts in other jurisdictions analyzing similar provisions of similar statutes have concluded that allegations supporting the claim "must be pleaded with particularity because they are akin to allegations of fraud." *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1524 & n. 8 (D.Kan.1995) (holding plaintiff's fraud claim failed Rule 9(b) particularity requirement, which in turn meant deceptive trade practices claim failed the particularity requirement) (citation omitted); *see also Duran v. Clover Club Foods Co.*, 616 F.Supp. 790, 793 (D.Colo.1985). It should be noted that the court allowed the plaintiffs to amend the deceptive trade practices claim to comply with Rule 9(b).[5] *Id.*

Accordingly, Defendant's motion to dismiss is denied and Plaintiff is given leave to amend the complaint to comply with the pleading requirements. Except for the element of intent, the deceptive trade practices claim should track the fraud by nondisclosure claim.

### E. Count VI Breach of Express Warranty

[16–18] The District of Columbia has defined express warranties under its uniform commercial code.[6] In order to succeed on a breach of warranty claim, a plaintiff must prove notice as well as that the defendant breached an express promise made about the product sold. Defendant argues for the dismissal of this count based on Plaintiff's failure to observe the timely notification requirement of breach of express warranty. (M.D. at 13.) The notice requirement provides that "[w]here a tender has been accepted (a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy(.)" D.C.Code Ann. § 28:2–607(3)(a) (1981). The statute requires "buyers who have accepted goods from sellers to notify those sellers within a reasonable time when the buyer contends that there has been a breach by the seller of the terms and conditions of the sale." *Rock Creek Ginger Ale Co., Inc. v. Thermice Corp.*, 352 F.Supp. 522, 528 (D.D.C.1971). In *Rock Creek Ginger Ale Co.*, the court noted that the purpose of the requirement is to open the doors to negotiation and that the plaintiff was not required to threaten litigation in order to provide notice. *Id.* at 529. Constructive notice, if established, will satisfy the requirement. *Wesley Theological Seminary of the United Methodist Church v. United States Gypsum Co.*, No. 85–1606, 1988 WL 288978 at *5 (D.D.C. Jan.5, 1988), *rev'd* on other grounds, 876 F.2d 119 (D.C.Cir.1989), cert. denied, 494 U.S. 1003, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990). In *Wesley Theological Seminary*, an asbestos case, the defendants sought dismissal of an express warranty claim, arguing the plaintiff failed to observe the notice requirement under District of Columbia code. The court found that the plaintiff, who had not actually notified the defendants of the law-

It shall be a violation of this chapter, whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to:

.    .    .    .    .    .

(e) misrepresent as to a material fact which has a tendency to mislead,
(f) fail to state a material fact if such failure tends to mislead;
D.C.Code § 28–3904 et. seq. 1996 replacement volume 6A.

**5.** This claim, unlike fraud, does not require the element of intent.

**6.** The relevant portions of the statute are as follows:

(1) Express Warranties by affirmation, promise, description, sample.

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warrant that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description....
(2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warranty" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
D.C.Code Ann. § 28:2–313 (1981).

suit before filing, demonstrated the existence of "a genuine issue of material fact as to constructive notice." 1988 WL 288978 at *5–6. The court further found the defendant could be constructively notified after receiving "numerous inquiries as to potential health hazards of its asbestos-containing products." 1988 WL 288978 at *5. The court went on to say that when a seller "willfully fails to disclose a defect," failure to notify cannot be raised as a defense. *Id.* at *6. If the Plaintiff has pleaded anything in the present case, it is that Defendant has refused to disclose its knowledge of the nature of nicotine and its manipulation of nicotine. As a result, the notice element is met.

■■ This claim must be dismissed, however, because Plaintiff can point to no promise made by Defendant. Although Plaintiff argues that Defendant's advertisements and promotional statements "contained broad claims *amounting* to a warranty that Defendant['s] cigarettes were not addictive, the Defendant[ ] did not manipulate the nicotine levels in [it's] cigarettes, and the Defendant[ ] did not intend to addict or maintain the addiction of Plaintiffs[.]" (Compl. at ¶ 77 (emphasis added).), this is insufficient under an express warranty claim. It appears Plaintiff is attempting to claim a 'warranty by omission' by arguing that Defendant's nondisclosure of the known addictiveness of nicotine implied a warranty that its cigarettes were not addictive. This argument is at odds with the definition of express warranty. Plaintiff has not pleaded an express promise on the part of Defendant. Although constructive notice to Plaintiff is present here, Plaintiff has not adequately pleaded any express promises made by Defendant; therefore this claim must be dismissed.

## F. Count VII Breach of Implied Warranty

■■ The District of Columbia has defined implied warranties under its uniform commercial code. Also known as the Implied Warranty of Merchantability, the statute states that a defendant can be liable for selling a product not reasonably fit for a particular purpose.[7] Defendant has raised two arguments in favor of dismissing this count. The first argument is the notice issue, as under express warranty. The notice requirements for both claims are the same. The Court rejects Defendant's first argument based on a finding of constructive notice. Defendant's second argument requires more discussion. District of Columbia cases show a tendency to merge claims for implied warranty of merchantability with strict liability. That is the second basis for Defendant's argument to dismiss this count. In *Cottom v. McGuire Funeral Service, Inc.*, 262 A.2d 807, 808 (D.C.1970), the court characterized the doctrines of implied warranty and strict liability in tort as "but two labels for the same right and remedy, as the governing principles are the same." The reason why implied warranty merges with the strict liability claim is that both are based on the sale of a product alleged to be defective. (M.D. at 13.) Precedent supports the merging of these two claims: *Bowler v. Stewart–Warner Corp.*, 563 A.2d 344, 346 (D.C.1989) (holding warranty liability and strict liability were both shown by proof a product was defective); *MacPherson v. Searle & Co.*, 775 F.Supp. 417, 422 (D.D.C.1991) (supporting merging implied warranty of merchantability with strict liability for product defect.). However, the court in *Payne v. Soft Sheen Prod., Inc.*, 486 A.2d 712, 720 (D.C.1985), noted that merger is available only when "no issues unique to warranty, like disclaimer or notice, are presented."

Defendant argues that the count should be dismissed for the same reason that the strict liability count should be dismissed. The Court holds that it is premature to dismiss this count, and will allow Plaintiff the oppor-

---

7. The relevant portions of the statute are as follows:

(1) Unless excluded or modified (§ 28:2–316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

(2) Goods to be merchantable must be at least such as . . .

(c) are fit for the ordinary purposes for which such goods are used[.]

D.C.Code Ann. § 28:2–314 (1981).

tunity to amend the Complaint to raise any claims unique to this cause of action.

## G. Count VIII Strict Product Liability

■ Defendant's motion to dismiss the strict liability count is denied. As a matter of law, this court cannot say that cigarettes are not unreasonably dangerous. The District of Columbia has adopted the Restatement (Second) of Torts § 402A as governing strict liability claims for design defect. The elements of a strict liability claim in tort, as adopted in *Warner Fruehauf Trailer Co., Inc. v. Boston*, 654 A.2d 1272, 1274 (D.C. 1995), are as follows:

1) the seller [must have been] engaged in the business of selling the product that caused the harm;

2) the product [must have been] sold in a defective condition unreasonably dangerous to the consumer or user;

3) the product [must have been] one which the seller expected to and did reach the . . . consumer or user without any substantial change from the condition in which it was sold; and

4) the defect [must have been] a direct and proximate cause of the plaintiff's injuries.

Explanation of what constitutes "unreasonably dangerous" is provided in comment (i) to § 402A. Comment (i) explains that an unreasonably dangerous product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

Plaintiff alleges that: Defendant has been engaged in the business of manufacturing and selling cigarettes; Defendant manufactured and sold cigarettes in an unreasonably dangerous condition; Defendant's cigarettes "were intended to and did reach the general public without substantial change in their condition"; and Plaintiff's harms are the direct and proximate result of the defect caused by Defendant. (Compl.¶¶ 85–89).

■ Defendant argues that § 402A precludes recovery on a claim that cigarettes have a design defect. Comment (i) explains

specifically that cigarettes made with "good tobacco" are not inherently dangerous merely because smoking may be physically harmful, whereas cigarettes tainted with marijuana might be unreasonably dangerous. The infamous comment (i) following § 402A appears to be on very shaky ground currently. Attitudes and knowledge about cigarettes have changed immensely since the comment was written and there is at least some authority that comment (i) is no longer a reasonable explanation of unreasonably dangerous.

In one such case, a federal court in Kansas held that a cigarette products liability claim was not precluded by the Restatement (Second) Torts § 402(A) requirements for strict liability, even though the smoker did not allege that cigarettes contained anything beside "good tobacco." *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan. 1995) The defendants had argued that the plaintiff failed to state a claim because he attacked cigarettes generically and did not allege specific defects. The defendants relied on comment (i) to § 402(A), which gives "good tobacco" as an example of a product which is not unreasonably dangerous. The court refused to dismiss the claim where the plaintiff had not yet been allowed to conduct discovery to flesh out the specifics of his design defect claim. This Court agrees with such an approach.

Accordingly, the Court denies Defendant's motion to dismiss the claim for strict liability.

## H. Count IX Equitable Relief: Injunctive and/or Declaratory

In Count IX, Plaintiff asks the Court to: declare Defendant financially responsible for notifying the general public of the addictive nature of cigarettes, and of Defendant's intent to addict the public; order Defendant to provide restitution and refunds to Plaintiffs and the general public for money spent on cigarettes; order Defendant to disgorge profits for the general public's benefit; and order Defendant to create a medical monitoring fund for Plaintiff and the general public. (Compl. at ¶ 94.)

■ Plaintiff's request that relief go to the general public creates a standing problem. The general public is not a party to this suit. The Supreme Court held in *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991), that a litigant can only assert his own legal rights and interests. In *Powers*, the Court held that a criminal defendant had no standing to raise the rights of a third party, a juror who's rights were allegedly affected by the jury selection process. The fact that the juror may have been injured, in fact, did not give the criminal defendant the right to request relief for the juror. Only the juror could bring such a claim. *Id.* It is well accepted that a litigant is only entitled to seek redress for his own injuries. *Id.* The heart of the constitutional standing requirement is that the plaintiff suffer an injury and that the relief be able to redress the injury. Plaintiff's alleged injuries cannot be redressed by the disgorging of profits to the general public. If this were a class action suit, it might be a very different situation. Although Plaintiff may request equitable relief as it applies directly to himself, the parts that refer to the public are subject to dismissal due to lack of standing.

■ The medical monitoring fund raises a separate issue in addition to standing. The most common example of medical monitoring claims at present is in the toxic tort context. Some jurisdictions recognize a cause of action for medical monitoring; others allow medical monitoring to be a component of the damages requested. In *Burton v R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan. 1995), the court dismissed a medical monitoring count where Kansas law did not recognize medical monitoring as a theory of recovery. The court found that the claim for medical monitoring was a component of the plaintiff's damages relating to other claims, rather than a separate claim. The Fourth Circuit also rejected a medical monitoring claim in *Ball v. Joy Technologies, Inc.*, 958 F.2d 36 (4th Cir.1991)(finding medical monitoring is only available where a plaintiff had sustained a physical injury proximately caused by the defendant). By making the equitable relief request into Count IX, Plaintiff has styled this as a cause of action, thus

subjecting it to the same criticism. Additionally, Plaintiff has failed to plead adequately the basis for medical monitoring. Whether a cause of action or a part of damages requested, medical monitoring requires that the plaintiff have a present injury and a reasonable fear that the present injury could lead to the future occurrence of disease. *Burton*, 884 F.Supp. at 1523. Those two elements are not present with respect to this plaintiff.

For these reasons, the Court concludes that Plaintiff's request for equitable relief, to the extent that it affects individuals other than Plaintiff, is not permissible under the rule of standing. Furthermore, any portions contained in this count relating solely to the Plaintiff are merely forms of damages to be requested in the prayer for relief. *E.g., Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515, 1523 (D.Kan.1995) (holding medical monitoring claim was merely component of damages). Count IX, therefore, is dismissed.

## I. Motion to Strike Portions of the Complaint

■ Defendant seeks to strike those portions of the Complaint that violate Rule 8(a) of the Federal Rules of Civil Procedure, which requires a "short and plain statement of the facts showing the pleader is entitled to relief." Defendant argues that paragraphs 16 through 42 of the Complaint "are wholly unrelated to Plaintiff's claims for relief." (M.D. at 18.) Defendant argues those paragraphs contain such irrelevant information as: alleged reports and testimony by tobacco companies other than the defendant; discussion of the mistreatment of the public rather than that of Plaintiff; and allegations concerning the "Tobacco Companies" rather than Defendant. (*Id.*) Defendant also notes that Rule 12(f) allows the court "to strike improper material from a complaint." (*Id.* at 19.) Defendant cites *Greene v. District of Columbia*, No. 91–0081, 1991 WL 111450 at *1 (D.D.C. June 14, 1991), support that portions of the Complaint should be stricken without leave to amend by Plaintiff for being "repetitive, wordy, and confusing." *See also, Ausherman v. Stump*, 643 F.2d 715, 716 (10th Cir.1981) (Tenth Circuit noted that a

complaint violated Rule 8(a) in that it was a "rambling narration" of the disagreement that gave rise to the case).

The Complaint's paragraphs are unnecessarily voluminous. Most of these paragraphs do contribute to pleading the causes of action, but they do so while using unnecessary evidentiary information. Paragraphs 17–20 explain nicotine addiction propensities, but include superfluous statistical facts. Paragraphs 21–42 relate to Defendant's knowledge of the nature of nicotine and intent to manipulate nicotine levels, however they allege far more than necessary to plead the causes of action. It is also inappropriate to refer solely to statements of other tobacco companies to show Plaintiff's entitlement to relief from the Defendant, as is done in Paragraphs 24, 26, 37(e), and 41. (*See* M.D. at 18, n 3.) All paragraphs that refer to tobacco companies without reference to Defendant should be stricken. Even the information contained in Defendant's memoranda set out in the Complaint should be summarized more briefly. Although Plaintiff's Response argues that Defendant does not specify which portions of the Complaint are to be stricken, Defendant in fact, refers to the objectionable paragraphs in its footnotes 3–5 at the bottom of page 18 of the Motion to Dismiss.

This court hold that the Complaint fails the requirements of Rule 8. It is neither short nor plain. However, the trial judge has discretion to strike improper material, dismiss the complaint, or allow the plaintiff to amend the complaint.[8] Therefore, Defendant's motion to dismiss is denied and Plaintiff is given leave to amend the Complaint to comply with Rule 8.

## III. *CONCLUSION*

Upon review the Court concludes that Plaintiff has stated a valid claim for strict liability and breach of implied warranty of merchantability. Defendant's motion to dismiss these claims, therefore, is denied. The Court further concludes that Plaintiff has failed to state a claim for constructive fraud, intentional infliction of emotional distress, breach of express warranty, and equitable

relief as a separate claim. These counts, therefore, are dismissed with prejudice. With regard to the fraud and deceptive trade practices claims, Plaintiff is granted leave to amend these counts. Leave is also granted to amend the prayer for relief. Finally, the Court concludes that portions of the Complaint, as described above, violate the short and plain pleading requirement. Accordingly, Plaintiff is given leave to amend the Complaint to cure the defect.

---

8. See 5 Wright & Miller, *Federal Practice and* Procedure § 1281 (1990).