

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-11-2008

# Alvarez v. Ins Co of N Amer

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1102

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Alvarez v. Ins Co of N Amer" (2008). *2008 Decisions.* Paper 1460.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1460

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-1102

———————

ROBERT ALVAREZ, INDIVIDUALLY,
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED,
                    Appellant

v.

INSURANCE COMPANY OF NORTH AMERICA; CIGNA
CORPORATION, d/b/a CIGNA GROUP INSURANCE

———————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 06-cv-04326)
District Judge:  The Honorable Stewart Dalzell

———————

Submitted Under Third Circuit LAR 34.1(a)
January 14, 2008

———————

Before: BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Filed: March 11, 2008 )

———————

OPINION

———————

BARRY, <u>Circuit Judge</u>

Appellant, Robert Alvarez, appeals the December 12, 2006 order of the District Court dismissing his complaint. We will affirm.

**I.**

Alvarez purchased, effective April 1, 1992, long term care ("LTC") insurance from the Insurance Company of North America ("INA"), a subsidiary of CIGNA Corporation ("CIGNA"), which had been selling LTC insurance since 1988.[1] Under the master policy issued by INA, "[p]remiums are subject to change at any time after payment of the first premium" and, in addition to state area rating classifications, "[r]ates are based on attained age on date of issue and this base does not change with age." (App. 89.) As a result, the premiums vary from individual to individual. A rider to the master policy includes a provision with the heading, "Guaranteed Renewable," which provides that "[a]n insured's coverage will automatically be renewed provided the required premium is paid and benefits have not been exhausted." (App. 106.) Prior to the time when Alvarez purchased his policy, he received promotional materials, which provided,

> [y]our coverage will stay in effect as long as you continue to pay premiums. The Company cannot terminate your coverage for any other reason. Your premiums are based on your age at the time of purchase and will not be adjusted unless the Company increases rates for the class as a group.

---

[1] CIGNA filed a motion to quash the summons on the grounds that it is not an insurance company and had no stake in the policy. The District Court denied the motion as moot after dismissing Alvarez's complaint. We will refer only to INA as the insurer.

2

(App. 122.)[2]  The promotional materials described INA as "rated 'A' (Excellent) by A.M. Best, an independent insurance rating service."  (App. 125.)

Later in 1992, INA ceased writing coverage under the master policy, an act known as "closing the block," thus capping the pool of insureds from which to support future claims.  Alvarez's 1992 annual premium was $1,188, and was raised for the first time in 2004, increasing to $2,138.[3]

Alvarez filed claims for actual fraud, constructive fraud, unlawful trade practices under the District of Columbia's Consumer Protection Procedure Act ("DCCPPA"), breach of the implied covenant of good faith and fair dealing, and punitive damages on behalf of himself and a class of other purchasers of LTC insurance underwritten by INA.[4] The District Court dismissed the contract and punitive damage claims because there was a clear contractual right to raise premiums, and because INA could not violate an implied covenant by exercising an explicitly reserved right.  After requesting supplemental briefing on the issue of whether INA had a duty under District of Columbia law to disclose future premium increases, the Court dismissed the fraud claim, finding that INA

_____

[2]  Similar statements about premium increases and descriptions of the Guaranteed Renewable provision are also found on Alvarez's application form and certificate.

[3]  This is an 80% increase.  INA points out that this is an average annual increase of 5.02% on a compound basis over the twelve year period prior to the increase.  INA also indicated that it intended to increase the premium by another 80% in the next two years.

[4]  This action was originally brought in the United States District Court for the District of Columbia and, on August 21, 2006, was transferred to the Eastern District of Pennsylvania.

had no such duty. The Court rejected Alvarez's claim of constructive fraud because no relationship of trust or confidence existed between the parties at the time INA allegedly fraudulently induced Alvarez to enter into the relationship. Finally, the Court dismissed Alvarez's claim under the DCCPPA because the same legal standard that applied to the fraud claim applied to it.

## II.

The District Court exercised jurisdiction pursuant to 28 U.S.C. § 1332(d). We exercise appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a motion to dismiss is plenary. Sands v. McCormick, 502 F.3d 263, 267 (3d Cir. 2007). We must accept as true all allegations of the complaint and construe all reasonable inferences that can be drawn therefrom in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The District Court found, and the parties agree, that the substantive law of the District of Columbia applies.

## III.

Alvarez argues, first, that INA made false representations to him on his purchase and on each renewal of his policy by omitting that (1) the policy was initially underpriced, (2) the actuarial assumptions and lapse rates were unsound, (3) the original premium would not be sufficient to support future claims, (4) it planned on seeking a

4

series of premium increases, (5) closing the LTC block would lead to financial losses, (6) it intended to raise premiums to exorbitant rates to obtain windfall profits by forcing insureds to drop the policy thereby avoiding future claims, and (7) it intended to pass any risk of loss due to the defective underpricing of the policy to him in the form of higher premiums.[5]

To establish a fraud claim, a plaintiff must show, by clear and convincing evidence, "(1) a false representation, (2) in reference to [a] material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." Bennett v. Kiggins, 377 A.2d 57, 59 (D.C. 1977). Although the elements of fraud must be pleaded with particularity, intent may be alleged generally. Fed. R. Civ. P. 9(b). A party must allege facts "which will enable the court to draw an inference of fraud," and allegations in the form of conclusions or impermissible speculation as to the existence of fraud are insufficient. Bennett, 377 A.2d at 59-60.

Nondisclosure may also constitute fraud, but only when there is a duty to speak. Loughlin v. United States, 209 F. Supp. 2d 165, 173 (D.D.C. 2002) (vacated on other grounds) (citing Kapiloff v. Abington Plaza Corp., 59 A.2d 516, 517 (D.C. 1948)). Such

---

[5] Alvarez also argues that the District Court considered additional information not contained in the pleadings and that the motion should have been converted into a motion for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure. INA submitted the master insurance policy, promotional materials, and an affidavit establishing the right to raise premiums. These materials were integral to, and were specifically relied upon in, the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

a duty arises when a partial disclosure is misleading, or if a confidential or fiduciary relationship exists.  Kapiloff, 59 A.2d at 518.  In Va. Acad. of Clinical Psychologists v. Group Hospitalization & Med. Servs., Inc., 878 A.2d 1226, 1232 (D.C. 2005), a case the District Court found particularly persuasive, plaintiffs alleged common law fraud against their benefits administrator based upon misrepresentations about their health coverage. Prior to applying for coverage under the plan, plaintiffs received a benefits booklet containing a directory of the panel of mental health providers available in the network, but were not told that there was a plan to cut reimbursement rates to providers by 30-40%, which resulted in 10% of the providers leaving the network.  Plaintiffs alleged fraudulent misrepresentation on the part of the administrator for failure to inform providers of the upcoming rate cut.

The Virginia Academy court held that the booklet contained no obligation or implied promise to provide a particular panel of a particular size, and that it included a disclaimer as to its currency.  The administrator was aware that the cut in reimbursement rates would have a marked negative consequence on the provider panel, that "it was going to be a shock for providers," and that there would be "a lot of clean-up work to do."  Id. at 1237 n.15.  This awareness, however, could not reasonably be found "to have mandated disclosure of that information to [plaintiffs] in particular so as to be deemed to have engaged in fraudulent misrepresentation."  Id. at 1237.  The composition and size of the provider panel, the court concluded, had not "so markedly change[d] that a breach of contract could fairly be inferred . . . ."  Id.

6

Alvarez claims that INA's representations that the policy was "Guaranteed Renewable" for life, that premiums "may" change, and that the premiums had been expertly priced, were "half-truths" and misleading because they did not tell the whole story, namely, that the policy was actuarially unsound and that the premiums would increase. Neither the policy nor the promotional materials contained any false or misleading representations, and INA did not have any duty to disclose the possibility of future premium increases or the underlying actuarial assumptions for that possibility.

For one thing, the policy explicitly reserved the right to raise premiums at any time after payment of the first premium. In the same way that the benefits booklet in Virginia Academy did not guarantee the size of the provider panel and thus no such promise could be implied, no representation was made that the right to raise premiums would not be exercised or that there was no plan to do so in the future. Moreover, the only limitation on that right was that premiums must be raised on a class, not an individual, basis, and that they could not be raised until after payment of the first premium. Even if INA knew that premiums would increase, the policy explicitly authorized such an increase and Alvarez cannot seriously claim to have been misled into believing that that would never happen.

Second, contrary to Alvarez's interpretation, the policy was guaranteed renewable, not guaranteed affordable. The guaranteed renewable clause meant that INA could not cancel a member's policy unilaterally for any reason, unless the member failed to pay the premium. This guaranteed the right to renew the policy, not the financial ability to renew

7

the policy, and did not imply that premiums would never increase, or that they would only increase by a limited, affordable amount.

Finally, neither the policy nor the promotional materials represented or implied that expert actuaries calculated the premiums, nor did they contain representations regarding the underlying methodology for calculating premiums. The policy merely stated that "[r]ates are based on attained age on date of issue and this base does not change with age." Similarly, the policy did not contain any representations, either explicit or implicit, regarding the financial soundness of the calculations, or future projections for premium calculations.[6]

But even if there was a misrepresentation, and we emphasize that we see none, Alvarez has not shown that he relied on any such misrepresentation. To establish reliance, he was required to show that the representation played a substantial part, and therefore was a substantial factor, in influencing his decision. Va. Acad. of Clinical Psychologists, 878 A.2d at 1238. All Alvarez offers is his statement that he would not have purchased the policy had he known about the future premium increases. We have difficulty understanding how he can claim to have relied on a provision that explicitly allows such increases to believe that premiums would never increase.

---

[6] Although the promotional materials stated that INA was rated "'A' (Excellent)", this was an apparently accurate statement of the current rating at that time, and a description of what the A.M. Best rating measured.

8

To succeed in a constructive fraud claim, a plaintiff must demonstrate that a confidential relationship exists between the parties. Witherspoon v. Philip Morris, Inc., 964 F. Supp. 455, 461 (D.D.C. 1997). A confidential relationship is characterized as one where one party is able to "exercise extraordinary influence over the other." Id. Alvarez argues that there is a confidential relationship between an insurance company and its insured such that there is a duty on the part of the insurance company to disclose all material facts, and cites Messina v. Nationwide Mut. Ins. Co., 998 F.2d 2 (D.C. Cir. 1993) (per curiam). Alvarez's reliance on Messina is misplaced. Messina dealt with a bad faith denial of an insurance claim where, by definition, the parties were in a contractual relationship unlike here where Alvarez's claim is that he was defrauded prior to the time that there was a contractual relationship, i.e. he claims that he was fraudulently induced to enter into that relationship. There was simply no confidential relationship at the time of the allegedly inducing conduct and, in the absence of a confidential relationship, the constructive fraud claim must fail.

Alvarez's DCCPPA claim fails for the same reason that his fraud claim failed, i.e. he has not shown any false representation by INA.

**IV.**

For the foregoing reasons, we will affirm the December 12, 2006 order of the District Court.

9